WALTER P. DWYER, Appellant, v. JAMES J. ROHAN, Respondent.

St. Louis Court of Appeals, March 17, 1903.

1. **Pleading and Practice:** REPLY: ANSWER: WAIVER. Where a plaintiff replied after his motion to strike out portion of defendant's answer had been overruled, he waived his exception on that ground.

2. ————: PLEA OF NEW MATTER: COMMON LAW. Under the code the plea of new matter in bar does not coincide exactly with a confession and avoidance at common law, as it may set up defenses which the logical severity of the common law system of pleading would not tolerate.

3. ———: ———. A plea of new matter under the code admits the allegations of the petition, and states facts not alleged in the petition which suffice to defeat a recovery, but not necessarily by way of discharging the plaintiff's cause of action.

4. ———: ———: LEGAL AND EQUITABLE PROCEEDINGS: PRACTICE, TRIAL: CODE PLEADING: LAW: ACTION: EQUITY. Under the code, as legal and equitable procedures are largely blended, equitable defenses may be set up to defeat a plaintiff's case; that is to say, demands which at common law could not be pleaded in defense of a legal action, but had to be enforced by a separate suit in equity.

5. Mortgagor: TRUSTEE: SALE UNDER DEED OF TRUST: DUTIES OF TRUSTEE. A mortgagor has a right to have the sale under a deed of trust given by him to secure the payment of a note, honestly conducted by the trustee, so that the property sold will realize the best possible price, to be applied in payment of the note.

6. ———: ———: FRAUD OF TRUSTEE: CONSPIRACY: RELIEF. And where a mortgagor sells property given to secure a note in a deed of trust, and the party to whom he sells agrees to pay the incumbrance on said property, he is directly interested in the foreclosure sale; and the trustee owes him the duty of conducting the sale fairly; and should the trustee enter into a conspiracy with the holder of the note and deed of trust, to permit him to get the property for a nominal sum, leaving the note unpaid, a wrong has been committed against the mortgagor which will entitle him to relief against the holder of the note and deed of trust, to the extent of the loss he sustained by the fraud of the trustee.

7. Appellate courts are not inclined to interfere with the finding of facts of the trial court.

## Appeal from St. Louis City Circuit Court.—*Hon. W. B. Douglas,* Judge.

AFFIRMED.

*R. M. Nichols* for appellant.

(1) The new matter pleaded as a defense in the first count in the answer is not, within the meaning of section 2050, Revised Statutes 1889, "a cause of action arising out of a contract or transaction set forth in the petition as the foundation of plaintiff's claim." And the court erred in not sustaining motion to strike

it out. Owen v. McKinsey, 133 Mo. 334; Allen v. Dermott, 80 Mo. 65; Barnes v. McMullins, 78 Mo. 260; Wilkinson v. Farnham, 82 Mo. 672; Gnatt v. Duff, 71 Mo. App. 93. (2) After such conveyance defendant had no right to redeem from the mortgage, and had no interest in the subject-matter of the mortgage which would require that he be made a party to a foreclosure suit. 2 Jones on Mortg. (4 Ed.), sec. 1056; Phillips v. Leavitte, 54 Me. 405; Lapsley v. Howard, 119 Mo. 489; Veerland v. Loubat, 2 N. J. Eq. 104; Andrews v. Steele, 22 N. J. Eq. 478; Johns v. Outwater, 36 Atl. 448; Murray v. Catlett, 4 Greene 109; Johnson v. Monell, 13 Iowa 300. (3) If the selling of the property by the trustee, who is not a party to the suit, to a member of the co-partnership which owned the note, and of which said trustee was the other partner, amounts to a conversion as against the person who had no right to redeem, certainly the person who was guilty of the conversion should be allowed to show the *real value of the thing converted.* Richardson v. Ashley, 132 Mo. 249; Menkens v. Menkens, 23 Mo. 252; Bredow v. Ins. Co., 28 Mo. 181; Becker v. Matthews, 12 N. Y. 313.

*Everett W. Pattison* and *Alfred P. Hebard* for respondent.

(1) By filing a reply to defendant's answer, plaintiff, appellant, waived his exceptions to the action of the trial court in overruling his motion to strike out parts of that answer; and the action of the court below in that regard can not be reviewed here. Walser v. Wear, 141 Mo. 443; Barkley v. Barkley Cemetery Ass'n., 153 Mo. 300; Williams v. Railroad, 112 Mo. 463; Wilson v. Scott, 50 Mo. App. 329. (2) When the creditor, the appellant here, destroyed or converted the security which he held for the debt, he thereby released the surety, the respondent here; and

this, too, whether or not he afterwards sold the security for less or more than the amount of the debt, his own evidence conclusively showing that the property was worth much more than the face of the note with interest. 24 Am. and Eng. Ency. of Law (1 Ed.), p. 856 (d), and cases cited; Wood v. Matthews, 73 Mo. 477; Bensieck v. Cook, 110 Mo. 173, 185; Bank v. Gifford, 79 Iowa 300; Priest v. Watson, 75 Mo. 310; English v. Seibert, 49 Mo. App. 563; Life Ins. Co., v. Landis, 50 Mo. App. 116; Bank v. Battle, 114 Mo. 276; Bank v. Leyser, 116 Mo. 51, 80. (3) Even if defendant had remained the owner of the equity of redemption, and no question of suretyship were involved in the case, it would still be true that plaintiff, by converting the security, lost the right to enforce the note against defendant. Wood v. Matthews, 73 Mo. 477; Bank v. Ross, 9 Mo. App. 399; Moore v. Thompson, 40 Mo. App. 195; Tobener v. Hassinbusch, 56 Mo. App. 591.

GOODE, J.—James J. Rohan, respondent, borrowed $1,250 from the Rice-Dwyer Real Estate Company, September 14, 1899, giving a note therefor secured by a deed of trust on two lots in the city of St. Louis, one in Brantner place, the other on Grand avenue opposite the fair grounds.

Said real estate company was a co-partnership composed of James and Thomas Rice and Walter P. Dwyer.

These lots had been owned by the respondent's father who had given a deed of trust on them, and default being made in the payment of the debt secured thereby, the deed of trust was foreclosed and respondent became the purchaser of the lots at the foreclosure sale. He applied to the Rice-Dwyer company to borrow money to pay the purchase price of the lots and in the course of the negotiation the parties had the title examined by August Gehner. Gehner said the

title was good and that if the Rice-Dwyer Company would not make the loan he would. Certain defects in the record title were detected at that time and shown in the certificate of title given by Gehner. One was an alleged imperfection in the acknowledgment by a married woman, Artlissa Begley, who joined with Bernard Begley in a conveyance of the property in 1868, twenty-six years before the deed of trust in question was executed. This conveyance was of the Brantner place lot. The other alleged defect related to the Grand avenue lot, the title to which, it seems, was derived through a tax sale in 1873, twenty-one years prior to the execution of the deed of trust, in which suit one John Walton, a one-time owner of the land, was defendant, and evidence was offered to show that said Walton died before the judgment in the tax suit was rendered.

These defects became known to both the Rice-Dwyer company and Rohan in the investigation of the title preliminary to the loan, but were disregarded as of no consequence on account of the long time the property had been in the possession of respondent and those under whom he claimed. In the deed of trust executed by the respondent, said Thomas Rice was trustee, the note secured being made payable to the order of James Rice. After the execution of the deed of trust Rohan conveyed the property to W. H. Denham, who assumed and agreed to pay the incumbrance. Denham defaulted and respondent Rohan refused to pay, contending that the debt was Denham's; so the property was advertised for sale and sold under the deed of trust by Thomas Rice in August, 1897, at public vendue at the east door of the courthouse in the city of St. Louis for $25, appellant Dwyer being the purchaser.

The note secured by the deed of trust was, as stated, originally the property of the Rice-Dwyer Real Estate Company, though James Rice was named as

the payee. At the time of the foreclosure sale, the note was owned by said partnership, but was subsequently assigned to the appellant who instituted this action to recover the balance due on it for the benefit of the firm.

The answer, besides a general denial, contains a count setting up a defense of new matter and another count pleading the same new matter by way of counterclaim. Those two counts consist of a recital of the partnership of the Rices and Dwyer; the facts in regard to the loan and the execution of the deed of trust; that the deed of trust provided for a sale by the trustee, Thomas Rice, at public vendue, to the highest bidder for cash in the event of default, but that the said trustee, being at the time of the foreclosure sale appellant Dwyer's partner, and joint owner and holder of the note secured by the deed of trust, advertised the lots for sale and struck them off for the nominal sum of $25 to his partner and co-owner of the note, the appellant, who was the only person who attended the sale and bid.

The answer further states that though the lots were of the value of $2,000, the trustee, professing to have lawfully executed the trust vested in him, conveyed the same to Dwyer by a deed, legal in form, for said consideration of $25; that appellant Dwyer having thus procured the title to said property was able to hold himself out as its owner and sold and conveyed it in 1898, by a properly executed deed, to an innocent third party for the sum of one thousand dollars.

After reciting the above facts the answer proceeded as follows:

"Defendant says that the conduct aforesaid of said trustee and of the plaintiff in the premises was wrongful and fraudulent, and was not a due and lawful exercise of said power of sale, vested by the said deed of trust in the said trustee, and did not, in contemplation of law foreclose said deed of trust or

take away the right of the said defendant to redeem said lands, or to cause the same to be duly applied to the payment of said note; because the defendant says that the said trustee, being a joint owner and holder of said note, had no power, without the consent of the defendant, which was not obtained, to become the purchaser of said property, at his own sale, which he did by fraudulently conspiring with the plaintiff, his partner, and other joint holders and owners of said note, to buy in the said property for their joint benefit and interest, and that, too, for the trivial sum aforesaid; and because the conduct of said trustee, in striking off said property to plaintiff herein at less than one-eightieth of its real value, instead of adjourning said sale for want of bidders, was wrongful and fraudulent and the result of a fraudulent understanding between the trustee and the plaintiff; and because the sum so bid for the said property was purely nominal and not substantial in contemplation of law; and because it was fraudulent on the part of the trustee to entertain such a bid, and on the part of the plaintiff to seek to acquire the property aforesaid for such an unconscionable pittance.

"Defendant says that by reason of the fraudulent and wrongful conduct aforesaid of the said trustee and of the plaintiff herein, the defendant has been wrongfully deprived of the power to redeem the said property by paying off the said note, as well as of the power to cause said property to be applied to the payment of the said note; that said lands now are and always have been, ever since the date of the execution of said note and deed of trust, of a cash value more than sufficient to fully pay the said note and all interest thereon, together with all proper costs and commissions which could arise from the sale of said lands under said deed of trust.

"Wherefore the defendant says that plaintiff should not be allowed to maintain this action upon the

note aforesaid and defendant prays judgment that he may be hence dismissed with his costs in this behalf.''

As stated, another count sets forth the same matter as the foregoing and asks judgment against the appellant by way of counterclaim.

Appellant filed a motion to strike out the new matter pleaded in the answer on the ground that it stated no defense to, plaintiff's cause of action, but matters *ex delicto*. This motion was overruled and an exception saved.

After the overruling of the motion to strike out the new matter contained in the answer, appellant filed a replication containing a general denial and also a special reply. The burden of the special reply is that Rohan had no title to the lots when he executed the deed of trust to secure the note in controversy by reason of the defects heretofore mentioned. It is alleged that at the trustee's sale when the lots were bid off by the appellant Dwyer, no title passed to Dwyer because Rohan had none to convey to the trustee Rice; further, that *Rohan knew at the time he made the deed of trust that he had no title to the lots but falsely represented that he could convey a good and sufficient title.*

The replication then states that after the lots had been conveyed by the trustee, Rice, to appellant pursuant to the foreclosure sale, Presha A. Browning and Artlissa Begley, who held the title, conveyed them to one Justin E. Joy; that afterwards, Joy instituted an action of ejectment against appellant Dwyer to recover possession of said lots, which litigation was compromised by Dwyer conveying to Joy all the right, title and interest in the lots which he (Dwyer) had acquired by the trustee's deed.

A demurrer to the new matter contained in the reply was filed and sustained on the ground that it con-

stituted no avoidance of the defense stated in the answer.

The case went to trial on the petition, answer and the general denial contained in the reply, and after hearing the evidence, it was adjudged that the respondent take nothing by his counterclaim and appellant nothing by the cause of action stated in the petition. From that judgment an appeal was prosecuted to this court.

The first error assigned relates to the refusal of the court to strike out the new matter stated in the answer as both a defense and a counterclaim. The appellant, having replied after his motion to strike out was overruled, waived his exception on that score. Scoville v. Glassner, 79 Mo. 449; Walser v. Wear, 141 Mo. 443; Barkley v. Cemetery Ass'n, 153 Mo. 300. The waiver would, perhaps, warrant us in refusing to examine further the question of pleading propounded by the appellant; but we are satisfied the ruling of the circuit court was right in refusing to strike out the facts specially pleaded as a defense. Said facts were repeated by way of counterclaim, but it is apparent the respondent had no counterclaim which entitled him to affirmative relief; because, as he had conveyed the equity of redemption to Denham, his loss by the alleged fraudulent collusion of the trustee, Thomas Rice, and the appellant could not exceed the amount of the note which he might be called on to pay. As the court found against the respondent on the counterclaim, if there was error in refusing to strike it out, the error was harmless.

Under the code, the plea of new matter in bar does not coincide exactly with a confession and avoidance at common law, as it may set up defenses which the logical severity of the common-law system of pleadings would not tolerate. A plea of confession and avoidance admits that the cause of action alleged in the petition or declaration once existed, but avers sub-

sequent facts which discharged or satisfied it. A plea of new matter under the code admits the allegations of the petition and states facts not alleged in the petition which suffice to defeat a recovery, but not necessarily by way of discharging the plaintiff's cause of action. Pomeroy's Remedies (3 Ed.), sec. 673. Under the code, as legal and equitable procedures are largely blended, equitable defenses may be set up to defeat a plaintiff's case; that is to say, demands which at common law could not be pleaded in defense of a legal action but had to be enforced by a separate suit in equity.

Respondent had a right of which the alleged tortious acts of the appellant and the trustee, Rice, deprived him; to-wit, the right to have the sale under the deed of trust honestly conducted so that the lots would realize the best price possible, to be applied in payment of the note. Worcester Bank v. Thayer, 136 Mass. 459. Appellant fallaciously argues that because Rohan had conveyed the equity of redemption he had no interest in the foreclosure sale and the trustee owed him no duty in making it. Rohan was responsible for the note as surety after he sold the lots to Denham and the latter agreed to pay the incumbrance on them. Nelson v. Brown, 140 Mo. 580. Rohan was therefore directly interested in the foreclosure sale, the trustee, as much as ever, owed him the duty of conducting it fairly and if the trustee and Dwyer conspired to get the property for a nominal sum, leaving the note unpaid, they committed a wrong which entitled Rohan to relief. If Dwyer had retained the lots, Rohan by the law of subrogation could have redeemed them after a voidable sale, by paying the debt. As Dwyer sold them to an innocent purchaser, thus depriving Rohan of the right to redeem, the latter should be relieved from liability on the note to the extent of the loss he sustained by the fraud of Dwyer and the

trustee. Hence, the new matter in the answer stated a good defense. This point has been directly adjudicated in identical cases. Jones v. Moore, 42 Mo. 413; Worcester Bank v. Thayer, supra; Savings Bank v. Munson, 47 Conn. 390; Bank v. Gifford, 79 Iowa 300; Palmer v. Hendrie, 27 Beav. 349; Walker v. Jones, L. R. 1 P. C. 50; Wulff v. Jay, L. R. 7 Q. B. 756; Polack v. Everett, 1 Q. B. Div. 669. Appellant also raises the proposition that Rohan could have been sued on the note in the first place, without the security being enforced, against the latter's right to complain of the trustee's sale. True enough; but in that event, as said above, Rohan by paying the note would have become subrogated to appellant's ownership of the security and therewith might have reimbursed himself; and the very gist of his defense is that he was deprived of the benefit of the deed of trust by a fraud in which the appellant participated.

The next point relates to the demurrer to the replication, which was sustained by the circuit court. We are not prepared to say that no sufficient reply to the defense above considered was made by the replication; because, as stated, that pleading contained the charge that Rohan knew when he procured the loan he had no title to the lots, but falsely and fraudulently represented and pretended he could convey a good and sufficient title thereto. If those facts had been true; if Rohan had been aware that he did not own the lots and had made the Rice-Dwyer Real Estate Company believe he did own them by false representations, on which they relied in advancing the loan, never knowing to the contrary until after the foreclosure sale, a serious question would be presented by the ruling on the demurrer; for it is difficult to see how Rohan could have suffered substantial loss by a sale of lots in which he had no interest, no matter how dishonestly the sale was conducted. Crumb v. Wright, 97 Mo. 13. But the replication stated the alleged imperfections in

Dwyer v. Rohan.

Rohan's title, and the evidence for appellant—indeed, his own evidence—shows that instead of Rohan making any fraudulent representation, appellant was informed of those defects during the negotiation for the loan, distinctly waived them and made the loan with full knowledge of their existence. Therefore, whatever error may have been committed in sustaining the demurrer to the replication as being an insufficient pleading, was harmless error, since the appellant's evidence demonstrates that the averment of fraud on the part of Rohan is untrue.

Appellant offered evidence to show respondent's title to the lots was bad, that the deed of trust given to secure the loan conveyed nothing to the trustee and that the trustee's deed pursuant to the foreclosure sale conveyed nothing to the appellant; which evidence, tending to show the flaws heretofore mentioned, was excluded. Appellant contends this ruling was erroneous, as he had a right to prove the defects, not only to overcome the respondent's defense based on the theory of loss by the fraudulent trustee's sale, but also in mitigation of the damages, as the lots would not sell for full value on account of the imperfect title.

Rohan and those under whom he claimed had been in possession of the lots for more than twenty years at the time the deed of trust was given, and meanwhile, so far as appears, no interest hostile to his had been asserted. Dwyer and his partners were apprised of the state of the title and accepted it as security notwithstanding its flaws. If thereafter they wrongly appropriated the lots, so to speak, shall they now be heard to say, against Rohan's claim to have their value applied to the extinguishment of his obligation, that they were not worth the obligation because, after said wrongful appropriation, a hostile interest was asserted? Justice to Rohan requires that the value of the lots at the time of the tortious sale be applied to discharge the note on which he was surety.

Generally speaking a pledgee, mortgagee, or bailee of personal property who has unlawfully converted it to his own use, can not, when sued for the conversion, question the ownership of the party from whom he received the property. Sherwood v. Neal, 41 Mo. App. 416; Pulliam v. Burlingame, 81 Mo. 111. The estoppel in such instances arises from the duty incumbent on one to whom property was delivered by another for a special purpose, to redeliver it to the person from whom he got it when the purpose has been served. We see no reason why that principle should not apply to a case like this, which contains facts in all respects similar to a conversion of personal property although not showing, of course, a technical conversion. And, indeed, the principle does apply to contracts regarding real property; for a lessee can not dispute his landlord's title and a vendee in possession of land who is bound to pay for it, can not deny his vendor's title. Smith v. Busby, 15 Mo. 388; Mattison v. Ausmus, 50 Mo. 554; Pershing v. Canfield, 70 Mo. 140; Crumb v. Wright, supra; Davis v. Watson, 89 Mo. App. 15. Land having been conveyed on the condition that intoxicating liquors should not be sold on it, with a proviso that if they were,' the premises should revert to the grantor, an ejectment suit was brought by the grantor for breach of the condition. To that action defendant sought to interpose the defense that the grantor's title was bad when he sold the land; but it was held that inasmuch as the defendant received the possession from the grantor on a condition which the defendant had broken, he was estopped to deny the validity of the title granted. Cowell v. Springs Co., 100 U. S. 55; O'Brien v. Wetherell, 14 Kan. 616. Possession must be restored to a vendor by a vendee who is still under an obligation with respect to the land, before the former's right can be questioned.

The trustee, Rice, got all his title to the lots in question from Rohan, as did also Dwyer, who got pos-

session as well.  Rohan was entitled to subrogation on satisfaction of the debt; a right not extinguished by a voidable foreclosure sale.  That is, Rohan was still entitled to pay the note and then enforce the security in order to make himself whole.  This being true, on what theory can Dwyer be permitted to question Rohan's title?  If such a course was allowed, a grantee could take a conveyance of land on condition, hunt a flaw in the title and defy the condition on the assumption that the grantor owned no estate to convey, although the latter's title had not been questioned nor his possession disturbed and perhaps never would be.  For aught we know, Rohan's title might never have been  questioned if he had kept the  property; or, if questioned, might have been successfully  defended.  To exonerate Dwyer on the ground that Rohan's estate was less than a perfect fee simple would be to make the latter bear a loss which he had no chance to defend against and was powerless to prevent.  If Dwyer had acted in good faith in buying the lots and had sustained loss through an imperfect title, he could have had recourse on Rohan's covenants.

The only point remaining is as to the sufficiency of the evidence to maintain the defense of a fraudulent and collusive trustee's sale; and we are not inclined to interfere with the finding of the court below on that issue.  To begin with, Rice had no right to buy the property at his own sale, as, in effect, he did when Dwyer bought for the benefit of the Rice-Dwyer Real Estate Company.  Rohan gave no consent for Rice, as his trustee, to act that way.  Moore v. Thompson, 40 Mo. App. 145; Byrne v. Carson, 70 Mo. App. 126.  Then the price for which the lots sold was but a trifle; nobody bid but Dwyer, and shortly after he bought the property he sold it to Joy for forty times as much as he gave for it.  Those facts uphold the finding that the sale was a wrongful appropriation of the security to the detriment of Rohan, and, as the value of the

lots when sold exceeded the amount due on the note, appellant was justly denied a recovery.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.