FOSTER *et al. v.* CAMPBELL *et al.**

(Division B. Jan. 31, 1927. Suggestion of Error Overruled March 14, 1927.)

[111 So. 148. No. 26149.]

1. MORTGAGES. *Grossly inadequate price in connection with abuse of confidence held to require cancellation of sale under mortgage.*

In view of grossly inadequate price, seven hundred dollars at which property worth four thousand dollars was sold under mortgage, in connection with abuse of confidence, *held* sale should be canceled.

2. MORTGAGES. *On canceling mortgage sale, amount paid by purchaser should be refunded.*

Where mortgage sale is canceled for inadequacy of price, money paid should be refunded, and accounting had to ascertain *status* of account.

3. MORTGAGES. *Mortgagors' continued occupation held notice to subsequent purchasers from purchaser at mortgage sale.*

Actual continued occupation of land by mortgagors is notice to all subsequent purchasers, relative to right to have sale under mortgage set aside for inadequacy of price, in connection with unfairness.

*Corpus Juris-Cyc. References: Mortgages, 41CJ, p. 1011, n. 12; p. 1027, n. 94; p. 1029, n. 21.

APPEAL from chancery court of Coahoma county.
HON. C. L. LOMAX, Chancellor.
Suit by Lena Logwood Foster and others against Mrs. Carrie W. Campbell and others. From an adverse decree, plaintiffs appeal. Reversed and remanded.

*J. J. Adams* and *Rufus Creekmore,* for appellants.

The appellants herein are uneducated, ignorant negroes, four of whom were very small children, one of them an infant, at the time of their father's death, whose claims, interest, legal and equitable rights as well as their mother's in said land are to be adjudicated by this court. From the conduct of appellees one might think that appellants have no standing or rights in the courts of our state, but that is not the law of the state of Mississippi. They are entitled to the same cool, deliberate and dispassionate consideration from the courts of our state in the adjudication of their difficulties as any other citizen of the state. U. S. Constitution, Amendments, article 14; Mississippi, Constitution, Bill of Rights, section 8.

Appellees have brought about a condition not provided for in said contract or deed of trust. The appointment of a new trustee under the power in said deed of trust cannot properly be made as this court has said that a substituted trustee cannot be appointed unless the terms of the power distinctly authorized it in the particular event which may have occurred. *Gwin* v. *Pickett,* 42 Miss. 77; Hill on Trustees (4 Ed.); *Clark* v. *Wil-*

*son,* 53 Miss. 119; *McNeal* v. *Lee,* 79 Miss. 459, 30 So. 821; *Jones* v. *Salmon,* 91 So. 199.

There is no provision in this deed of trust by stipulation or implication whereby the *cestui que trust* could by private sale, sell, assign, convey or deliver by warranty deed all of his right, title, and interest in and to said note and deed of trust and two years and a half later appoint a substituted trustee. This class of cases is looked upon with a suspicious eye and always strictly construed by the law. *Guin* v. *Pickett,* 42 Miss. 77; *Clark* v. *Wilson,* 53 Miss. 119; *Jones* v. *Salmon,* 91 So. 199; *Cox* v. *American Freehold & Land Mort. Co.,* 40 So. 741.

While a power of sale in a deed of trust is valid and a sale thereunder may confer a good title, the powers of the person foreclosing thereunder are limited and defined by the instrument under which he acts, and he has only such authority as is expressly conferred upon him by said instrument and that power is strictly construed against him. 19 R. C. L., page 592, sections 4-6-07; citations, *Scotish Am. Mort. Co.* v. *Butler,* 99 Miss. 56, 54 So. 666; *Jones* v. *Salmon,* 91 So. 199; *Guin* v. *Pickett,* 42 Miss. 77.

Appellants recognize the general doctrine of delegated powers, and the rule seems to be that the power delegated to appoint trustees is a personal power or trust, which cannot for that reason be delegated. We understand the rule applies when the donee is a natural person, but has no application when the donee of the power is a corporation as in the case at bar; and furthermore, the mortgagor and mortgagee did away with this rule in this case when they appointed the acting sheriff of Coahoma county successor in trust. *Allen* v. *Alliance Trust Co.,* 84 Miss. 319, 36 So. 285; *Virginia Trust Co.* v. *Buford et al.,* 86 So. 356.

The pretended appointment of the new trustee, W. M. Lee, was void and of no effect. The appointment could have been only on the grounds of the *cestui que*

*trust* having some power; and yet how can the power be divided or separated from the interest in the property, if it can be? What is to prevent the *cestui que trust* after he has assigned all of his rights, title and interest from selling the property again without regard to the assignee? Where is the restriction? 19 R. C. L., page 353, section 124 and citations; *Niles* v. *Ransford,* 51 Am. Dec. ———.

It is well settled in Mississippi that a sale under a deed of trust by a substituted trustee under a void appointment is a void sale. *Watson* v. *Perkins,* 40 So. 643; *Hartly* v. *O'Bryan,* 13 So. 241; *Allen* v. *Alliance Trust Co.,* 84 Miss. 319, 36 So. 285.

Also the rule seems to be well settled that if there are any irregularities whatever in the mode of exercising the power, the appointment will be void, and we submit that the mode exercised in the appointment of said W. M. Lee, the new trustee in said deed of trust in the case at bar was manifestly irregular and void. *Clark* v. *Wilson,* 53 Miss. 119; Hill on Trustees, 281.

This is a case in which confidential or fiduciary relations existed between appellants and W. S. Campbell. If a wrong arises, the same remedy exists against the wrongdoer on behalf of the principal as would exist against a trustee on behalf of the *cestui que trust.*

Campbell entered into an agreement with appellants that the law and equity should and will enforce; and the purchase of said land and home by said Campbell, deceased, in his own name is a purchase only as trustee of appellants. 25 C. J. pages 1118-20, note 66 in full; 2 Pomeroy Equity Jurisprudence (3 Ed.), sections 956 and 958; *Dick* v. *Alvers,* 134 A. S. R. 369 and note.

It is a well-settled rule in equity that any one acting in a fiduciary or confidential relation, shall not be permitted to make use of that relation to benefit his own personal interest, except with the full knowledge and consent of the other person. 25 C. J., pages 1118-20 and notes; *Comfort* v. *Winter,* 66 So. 536; *Hebron* v.

*Kelley,* 21 So. 799; *Wilson* v. *Hoffman,* 61 So. 699; *Soggins* v. *Heard,* 31 Miss. 426.

We submit that the relations between appellant and said Campbell are such as to show that they do not deal on terms of equality but that either, on the one side, from superior knowledge of the matter derived from a confidential or fiduciary relation, or from overmastering influence; or on the other from weakness, dependence or trust reposed. The sale of said land should be set aside and held for naught and an accounting ordered. 25 C. J., page 112, note 77; *Comfort* v. *Winters,* 66 So. 536; *Soggins* v. *Heard,* 31 Miss. 426; *Hensen* v. *Cooksey,* 127 A. S. R. 345.

Fraud vitiates all transactions and may be predicated on promises designed to entrap the unwary and never entered to be kept, as well as misstatements of existing facts. *Paten-Worsham Drug Co.* v. *Planters Mercantile Co.,* 38 So. 209; *Bunch* v. *Shanon,* 46 Miss. 525; *Soggins* v. *Heard,* 31 Miss. 426.

The statute law of Mississippi, section 2458, Hemingway's Code (section 3094, Code of 1906) deals with adverse possession. The confidential and fiduciary relation existing between said Campbell and appellants would estop him from setting up such a claim against appellant, even though he had been mortagee. 25 C. J., pages 1118-20, and notes; note 77, page 1120.

We understand the rule in adverse possession to be that in order for an adverse claim to ripen into a perfect title by virtue of the statute of limitations, it is primarily essential that the possession relied on be actual; and we submit that said W. S. Campbell, deceased, was never in actual possession of said land at all. 2 C. J., page 51; *Davis* v. *Bomar,* 55 Miss. 671; *Magee* v. *Magee,* 37 Miss. 134.

Appellants here repeat that said W. S. Campbell, deceased, never did have possession of said land, never did notify appellants that he claimed ownership of said land, much less demand of them the possession of said

land and if he ever charged appellants rent on said land he did so without the knowledge or consent of appellants, ''and if he did so, it would not apply to the four *minor* appellants.'' 2 C. J., pages 75-761, notes and citations; *Alexander* v. *Polk,* 39 Miss. 737 and citations; *Magee* v. *Magee,* 37 Miss. 138; *McCaughn* v. *Young,* 37 So. 839.

An exclusive possession is a necessary element of title by adverse possession and it must be exclusive as well as hostile. A scrambling possession will at no time suffice. 2 C. J., pages 80 and 118.; *Tegarden* v. *Carpenter,* 36 Miss. 404.

This cause was filed in a court of equity and the rules of equity should be applied.

*Vincent Brocato* and *Cutrer & Smith,* for appellees.

The complainants here rely upon two theories for the granting of the relief prayed for in the bill of complaint: (1) That the appointment of a trustee by the Middlesex Banking Company was void and of no effect, and that all acts done and contemplated by the alleged substituted trustee, Willis M. Lee, were consequently void and of no effect. (2) That the acts of W. S. Campbell, deceased, with reference to the purchase of the lands here in question at the foreclosure sale constituted such fraud as to create a resulting trust for and on behalf of the complainants.

I. With reference to the first contention, we have no fault to find with the authorities cited in the brief. We are confident that the terms of the instrument, under which the substituted trustees purported to act were strictly complied with.

It is admitted that the trustee occupies a position of personal trust, and that the doctrine of *delegatus non est delegara* is a general and recognized principle of law. Under the doctrine as stated in *McNeal* v. *Lee,* 79 Miss. 459, the power to appoint a substituted trustee is vested

solely and entirely in the person designated in the instrument by which such power may be exercised. It is a fundamental and undisputed principle of law, and it is a principle of law upon which counsel for appellants seem to rely strongly, that the instrument under and by which such substituted trustee acts must be construed strictly and that any powers or rights not delegated in the instrument cannot be exercised. *McNeal* v. *Lee,* 79 Miss. 459; *Allen* v. *Alliance Trust Co. et al.,* 84 Miss. 319.

In the case at bar, under the original deed of trust given by the appellant, Lena Logwood Foster, the power to appoint new or additional trustees was vested solely in the Middlesex Banking Company, and provided that the Middlesex Banking Company *shall* make such new reappointment and such instrument shall be signed by the president of the said company, and only on refusal or failure of the Middlesex Banking Company to act should the acting sheriff of Coahoma county act in that behalf.

The Middlesex Banking Company did act and acted in a legal and authorized manner. We are unable to comprehend from appellants' brief upon exactly what grounds they rely for the statement that the sale at which W. S. Campbell purchased the lands here in controversy was a void sale. The instrument was the controlling and determining factor as to what extent such powers and rights were delegated. *McNeal* v. *Lee,* 79 Miss. 459; *Clark* v. *Wilson,* 53 Miss. 119.

In fact, we could present no stronger authorities than counsel for appellants themselves have produced for the proposition that the powers and duties exercised and performed by the substituted trustee were so exercised and performed in accordance with the instrument that conferred such powers and duties.

It is true that the intentions of the parties must be determined from the instrument recognizing such reappointment. *West* v. *Union Naval Stores Co.,* 117 Miss. 154. The fallacy of appellants' contention in this regard lies chiefly in the salient feature that they failed to recog-

nize that the power to appoint new or additional trustees was vested in the Middlesex Banking Company.

II. As to the second contention, the complainants below presented a question of fact and we maintain that the findings of the chancellor were eminently correct, have the full force of a jury finding, and should not be disturbed. The chancellor was fully justified in finding that a fiduciary relation did not exist.

In the case at bar the complainants below wholly failed to establish their claim; and, in fact, alleged in the bill of complaint that they were wholly unaware at that time that the property had been sold and reiterated emphatically that they were under the impression and worked and stayed upon the lands in question under the theory and idea that the indebtedness had been paid off and that the said property had never been sold. We submit that it is a fundamental and well-established principle of law that without such a contract, a resulting trust could never be decreed. It is equally true that parole evidence to establish a resulting trust on realty must be so equivocal as to remove from the mind of the chancellor every reasonable doubt. *Rogero* v. *Rogero,* 62 So. 899, 66 Fla. 6.

In such cases as the case at bar where a resulting or constructive trust for that matter is attempted to be established by parole testimony, the proof must be clear, satisfactory, convincing and exclude every reasonable doubt. *Steward* v. *Hackler,* 173 S. W. 425, 117 Ark. 655; *Freeman* v. *Peterson,* 100 Pac. 600, 45 Colo. 102; *De France* v. *Reeves,* 125 N. W. 655, 148 Iowa 349; *Matt,* v. *Matt,* 137 N. W. 489, 156 Iowa 503 (1912); *Johnston* v. *Sherehouse,* 54 So. 892, 61 Fla. 647; *Nelson* v. *Nelson,* 96 S. W. 794, 29 Ky. Law Rep. 885; *Turpin* v. *Miles,* 71 Atl. 440, 108 Md. 678; *Barnes* v. *Spencer,* 153 Pac. 47, 79 Ore. 205; *Feaster* v. *Kendall,* 61 S. E. 200, 80 S. C. 30; *Schmidt* v. *Scanlan,* 144 N. W. 128, 32 S. D. 608; *Denney* v. *Holden,* 103 Pac. 1109, 55 Wash. 22 (1914); *Herriford*

v. *Herriford,* 139 Pac. 212, 78 Wash. 429; *Cassady* v. *Cassady,* 81 S. W. 829, 74 W. Va. 569.

Appellants rely to a great extent upon allegations of fraud and misrepresentations while we maintain and earnestly insist that such allegations were never sustained in a clear and convincing manner, or in any manner whatsoever. It is just as clearly manifest that had such fraud existed, the same would fall within the statute of frauds, and applicants would be barred from recovery. Sections 3124-25, Hemingway's Code (sections 3090-91, Code of 1906). The case of *Miazza* v. *Yerger,* 53 Miss. 135 is controlling, and to like effect are *Campbell* v. *Price,* 40 So. 3; and *House* v. *Gumble,* 78 Miss. 529.

Complainants below contended that title also vested in them because of the adverse possession within the limits of the statutes relative thereto with reference to the particular lands here involved. We have no fault to find with the authorities cited by counsel for appellants in regard to the doctrines admittedly prevailing in this state, but on the other hand, we submit that the testimony showed convincingly that the possession of the lands in controversy by the appellee was actual, hostile, adverse, uninterrupted, exclusive, open and notorious, and that as a result thereof title to said lands was vested in them. Section 3094, Code of 1906.

Argued orally by *Rufus Creekmore* and *J. J. Adams,* for appellants.

HOLDEN, P. J., delivered the opinion of the court.

This is a suit in equity for an accounting and the cancellation of certain conveyances of eighty acres of land claimed by the appellants, Lena Logwood Foster and her minor children. The bill seeks relief upon several different theories, but we shall notice only one, because the decision of that point will settle the case, and the other

questions need not be passed upon. The decisive question is whether or not the sale of the land under the mortgage should be set aside because the price paid was grossly inadequate, amounting to fraud, which vitiated the sale.

We will state briefly enough of the facts for an understanding of the decision:

The appellants, Lena Logwood Foster and her minor children were ignorant, uneducated negroes, who inherited the land in question from William Logwood, the first husband of Lena, who died in 1902. Lena then married Foster, and she and her husband and minor children continued to occupy the land up until this suit was filed.

The deceased, William Logwood, his wife, Lena, and the children went upon the land in 1899, cleared it and improved it. In the same year William Logwood and his wife, Lena, executed a deed of trust to secure a note for the sum of four hundred dollars in favor of the Middlesex Banking Company of Connecticut. After the death of William Logwood, the Middlesex Banking Company transferred the mortgage to W. H. Wildberger, and one Willis M. Lee was substituted as trustee in the place of Cameron in the deed of trust.

In 1907 the appellants were informed that the said Wildberger had advertised the land for sale under the mortgage, to satisfy the four hundred dollars mortgage indebtedness, whereupon appellants went to W. S. Campbell, now deceased, and whose administrator is one of the appellees herein, and requested the said Campbell to pay the indebtedness for them and prevent the sale under the deed of trust. Campbell was an experienced business man. Appellants had been trading with Campbell. He had been their merchant and financial friend for many years, and promised complainants that he would pay the mortgage indebtedness for them. He told them to go home and go to work, and leave the matter to him; that he would protect their interest in the property by paying the mortgage for them.

Appellants, relying upon the assurance of Campbell, went home and about their work, and continued to trade with Campbell, and to rely upon him for many years thereafter, believing all the time, as they were informed by Campbell at different times, that the mortgage on their place had been settled by Campbell, and that they were paying him the amount that he had paid out in settlement of the mortgage. Appellants, four of whom are minors, being ignorant and confiding in their natures, thus relied upon and trusted Campbell to see that their property was not foreclosed under the mortgage.

In 1907, the trustee in the deed of trust sold and conveyed the land in question to the said W. S. Campbell for the sum of seven hundred seven dollars, and a trustee's deed was executed to Campbell. The undisputed proof in the record is that the land was worth more than four thousand dollars at the time it was sold under the deed of trust. The appellants, not knowing that the land had been sold, continued their business relations with the said Campbell, and continued to live on the land and cultivate it, believing that Campbell had paid the mortgage for them, as he had often told them he had done.

The appellants traded with and sold their crops to Campbell each year, and purchased merchandise from him, and a short statement was rendered by Campbell to appellants each year showing the *status* of the account between them. The appellants, according to the record, thought that Campbell was collecting from them the amount he had paid out in settlement of the mortgage, and they knew that he was paying the taxes on the land and charging their annual account therewith. The appellants asked the said Campbell for a settlement in 1920, but this was refused, and appellants finally found out that the land had been sold under the mortgage, and that Campbell had bought it in at the sale, and that he pretended to be the owner of the land. Campbell died in 1921.

Campbell had never claimed the land nor demanded possession of it before this time, but had always led complainants to believe, according to the record, that the mortgage indebtedness had been paid off by him, and that appellants still owed him a balance on the amount so paid.

The appellants offered proof, which was practically undisputed, that they had been deceived and defrauded by the said Campbell in the sale and purchase of the land, as mentioned hereinbefore. It was shown without contradiction, that seven hundred seven dollars was a grossly inadequate price for the land, which was at the time worth more than four thousand dollars. Appellants tendered seven hundred seven dollars in the trial court to pay the amount that Campbell had paid the trustee under the mortgage sale, and offered to pay any other sum the court might find to be due.

In the year 1920 the said Campbell executed a deed of trust to the Planters' Bank of Clarksdale, and in 1923 this deed of trust was foreclosed, and the Yazoo-Delta Mortgage Company, one of the appellees herein, was the purchaser at the sale. After the execution of the mortgage to the Planters' Bank, the said W. S. Campbell died, and this suit is against his administratrix and others, to cancel and set aside the deed obtained by Campbell under the foreclosure sale of the deed of trust made to Middlesex Banking Company, and the cancellation of all subsequent conveyances.

The defendants answering, denied all of the allegations of fraud and other allegations of the bill, but averred that all the transactions were in good faith, and that the several instruments of conveyance were valid; denied that appellants were entitled to an accounting, or to any relief prayed for, and asked for cross-relief confirming title to the said land in the Yazoo-Delta Mortgage Company, which was granted by the court, from which this appeal is prosecuted.

We have carefully reviewed the testimony in the record, and we think the lower court erred in refusing the relief prayed for by the complainants below. The testimony showing the fiduciary relations between Campbell and the appellants for many years is practically undisputed. The land in question was unquestionably worth more than four thousand dollars at the time it was sold for seven hundred seven dollars to Campbell under the Middlesex Banking Company's deed of trust.

There is some indirect and circumstantial evidence which tended to show that Campbell had not deceived these ignorant and confiding negroes with reference to protecting them against a sale under the mortgage for four hundred dollars but the substantial proof in the case shows overwhelmingly that these negroes traded with Campbell for many years; that they trusted him, and believed that he had protected them against the foreclosure of the four hundred dollars mortgage. We may say at this juncture that we do not pass upon the question of whether there was a resulting trust in favor of appellants under these circumstances, because it is unnecessary to do so. But we do say, in the language of this court in *Elmslie* v. *Mayor* (Miss.), 35 So. 201, that:

"Joined to the gross inadequacy of consideration there are so many circumstances indicating surprise, unfairness, and undue advantage taken of appellant that a court of conscience should not permit this sale to stand."

We are therefore of the opinion that the grossly inadequate purchase price bid by Campbell at the sale under the Middlesex Banking Company's deed of trust invalidates the sale as fraudulent in law, and that it should be canceled.

Of course the amount paid out by Campbell in the purchase of the land at the sale should be refunded by the appellants, and an accounting should be had between the parties to ascertain the *status* of the account between them. *Herring* v. *Sutton*, 86 Miss. 283, 38 So. 235; *Mar-*

*tin* v. *Swofford,* 59 Miss. 328; *Hesdorffer* v. *Welsh,* 127 Miss. 261, 90 So. 3.

Actual occupation of the land by appellants was notice to all subsequent purchasers.

The decree of the court below is reversed, and the cause remanded for further proceedings as directed herein.

*Reversed and remanded.*