NATIONAL BANK OF BRUNSWICK, GA., *v.* GORENFLO *et al.*

(Division B. April 22, 1935. Suggestion of Error Overruled Sept. 16, 1935.)

[160 So. 911. No. 31638.]

Gardner & Backstrom, of Gulfport, for appellant.

White & Morse, of Gulfport, for appellees.

Argued orally by **Oscar Backstrom**, for appellant, and by **W. H. White** and **S. E. Morse**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

Appellant, plaintiff in the court below, filed suit against appellees, Irma Du Kate Gorenflo, and Mrs. Linda R. Du Kate, on a promissory note for fourteen thousand five hundred dollars secured by certain corporate stock pledged as collateral; the stock being in the Dunbar Du Kate Company. It was alleged in the declaration that the original note was for fifteen thousand dollars and was payable in ninety days after date, and had been renewed by the payment of five hundred dollars. There were three classes of shares involved in the pledge, being six hundred seven shares of class B common stock, six hundred seven shares of class C common stock, and six hundred seven shares of preferred stock. It was also alleged that default was made in the pay-

ment of said note, and that, under its terms, the plaintiff had the right to sell at either public or private sale and to become the purchaser at said sale, that it elected to sell at public sale and advertised the collateral for sale in a newspaper published at Brunswick, Ga., and that, when the sale was made where sheriff's sales were usually made, an attorney for the bank cried off the stock and it was purchased by the Georgia Realty Company, a subsidiary of plaintiff, for the sum of two hundred dollars, which amount was credited on the note.

The general issue was pleaded, and Mrs. Du Kate filed a special plea of no consideration, alleging that said note was indorsed subsequent to the signing and making of said note by Irma Du Kate Gorenflo, and was not made contemporaneously therewith, nor in pursuance of any arrangement for the credit of the maker. The plaintiff demurred to this plea, which demurrer was overruled. Mrs. Gorenflo then filed a plea of set-off, claiming that the market value of the stock was twenty-one thousand two hundred forty-five dollars, and that she should have six thousand seven hundred forty-five dollars by way of set-off. This plea of set-off was demurred to, and the demurrer was sustained. Thereupon Mrs. Gorenflo filed an amended plea of set-off, averring that the plaintiff did not use reasonable skill and diligence to obtain a fair price for the stock sold as collateral; that its market value was twenty-one thousand two hundred forty-five dollars. This amended plea of set-off was demurred to, and this demurrer was taken under advisement by the court to be decided in vacation, but, before the decision thereon, a motion was filed by the defendant Irma Du Kate Gorenflo to be allowed to amend the pleadings so as to make the plea of set-off a plea of recoupment, which motion was sustained by the court. In said plea of recoupment, which averred substantially the same facts as in the plea of set-off, she stated the value to be eighteen thousand nine hundred sixty-two

dollars and forty-eight cents as the total amount involved in the suit filed by the plaintiff. This plea was demurred to, and the demurrer was overruled, and a motion was filed to strike said plea from the files, on the ground that the court had no power to allow a plea of recoupment as an amendment to a plea of set-off at that stage of the hearing.

The note of the appellees was introduced in evidence, and it contained the following stipulations: "On the non-payment of this note or any of the above mentioned liabilities, or upon the non-performance of the foregoing agreement as to furnishing additional collateral, then and in either case, the said bank is hereby authorized to sell, assign and deliver the whole or any part of the said securities therefor, or any addition thereto, or any other property at any time given unto or left in the possession of the said bank by the undersigned for safe-keeping or otherwise, at public or private sale, at the option of the said bank, or either of its officers, without either advertisement or notice, which are hereby expressly waived. If such securities or property are sold, the said bank may itself purchase the whole, or any part thereof, free from all rights of redemption on the part of the undersigned, which is hereby waived and released. In case of any such sale, the said bank may first deduct all of the expenses of collection, sale or delivery of the property or securities so sold; and may then apply the residue to any one or more or all of the said liabilities, whether due or not, as either of its officers shall deem proper, making proper rebate for interest or liabilities not then due, and returning the over-plus, if any, to the undersigned, who shall remain liable to the said bank for any deficiency arising upon such sale."

Notice of the sale was also introduced in evidence. It was not shown, however, that the newspaper containing the notice was sent to the appellees or to any other persons living in New Orleans, La., or Biloxi, Miss.

The appellant introduced evidence of its cashier and attorney to the effect that a letter was written to Mrs. Gorenflo giving notice of the sale, and that a copy was sent to Mrs. Du Kate; that this letter was dictated in the office of the attorney, signed by an officer of the bank, and by said officer placed in the mail basket, or mailing department, of the bank, and that some of its servants were in the habit of carrying this mail to the post office. Mrs. Gorenflo denied ever having received this letter, and denied knowledge of the sale being advertised or made prior to the filing of the suit, which was filed on June 10, 1932, three days after the alleged sale. She introduced a letter dated May 28, 1932, addressed to the president of the Bank of Brunswick, Ga., in which she was offering extra collateral and her mother's indorsement, with the view of extending the note. This letter was received by the bank president, and he advised with an attorney and decided to sell the collateral to said note. Subsequent to the sale, on June 24th, Mrs. Gorenflo addressed another letter to the bank president inquiring as to whether she could put up extra collateral and have the indebtedness carried, and also inquired about the Dunbar Du Kate stock. She had an interview with an attorney after the suit was filed and before this letter was written, and such attorney testified that she admitted receiving a copy of the notice of sale, which testimony was denied by Mrs. Gorenflo. In the letter of June 24th she stated: "I have a plan whereby I think things might be arranged, but want to know just how these stocks and other note of ten thousand dollars stand." This letter was answered on June 27, 1932, and the president of the bank stated that the bank would be pleased to carry the ten thousand dollar note for a reasonable length of time, provided acceptable collateral was placed with the bank. He also stated that the Dunbar Du Kate stock had been purchased by the Georgia Realty Company, but he felt sure it would be willing

to surrender said stock on being paid the purchase price of two hundred dollars.

In addition to the testimony of Mrs. Gorenflo, she introduced E. L. Du Kate, who testified that he had been connected with the Dunbar-Du Kate Company as vice president, and was familiar with the company's affairs and with the value of its stock in June, 1932, and that the value was thirty dollars per unit, and that a unit was composed of one share of B common stock, one share of C common stock, and one share of preferred stock, and that this set-up or unit was then worth thirty dollars, and that the total, on this basis, amounted to eighteen thousand two hundred ten dollars, or thirty by six hundred seven, and that two hundred dollars was an utterly inadequate price for said stock. This testimony was objected to, which objection was overruled. On cross-examination, this witness testified that he based his idea upon what he paid for his stock shortly before June, 1932, and upon the assets of the corporation, and upon its good will. He also stated that he had an appraisal of the property of the Dunbar Du Kate Company made by the American Appraisal Company of Milwaukee, Wis., and that his opinion was based upon the assets, good will, etc. He further testified that the company made money some years and lost money some years.

The appellant offered in rebuttal W. F. Gorenflo, who testified that he was a stockholder in the Dunbar Du Kate Company, and was a director in 1932, and that there was no market value for the stock that year, that he had tried to sell his stock without avail, but that the company had a great many plants unincumbered, and owned property in Pass Christian, Biloxi, New Iberia, Violet, and one on Bayou Labatre, and another one at another point, which they had sold and which they had to take back, and that the company's trade-name was its most valuable asset. An attorney from Georgia was

also introduced in rebuttal, and he testified that he made inquiry as to the market value of the stock, and that there was no market value, but no witness was introduced to show upon what this information was based.

It is strongly contended that the court erred in permitting the plea of recoupment to be filed before the judge had decided the issue as to the validity of the plea of set-off. Under our statutes, the pleadings may be amended up to any time before the jury retires. Therefore we think the court committed no error, as it was within the discretion of the judge to permit the plea to be filed. It is also contended that the court erred in permitting E. L. Du Kate to testify as to the value of the stock. A witness may give his opinion as to values after stating the basis therefor where he has sufficient facts upon which to base his opinion.

In the case at bar, this witness was vice president of the Dunbar Du Kate Company, and knew its business, and based his opinion upon such knowledge. This, we think, is permissible in proving values. Many stocks have no market value, but may have an actual value which is recognized in all business institutions, and a business having such actual value may sell its stock, borrow money, etc. We find no reversible error in the admission of this testimony, and think the evidence was sufficient to support the verdict of the jury in this case.

It is also contended that there was no showing sufficient to overturn the good faith of the sale of the stock, and that the appellant's proof showed that it had complied with the requirements of the note, and, inasmuch as the stock was sold publicly, and no bidder other than a subsidiary of the bank appeared, the court should have directed a verdict for the appellant.

We think the law is well settled in this state, as well as in other states, that a gross inadequacy of price is sufficient to constitute fraud, and sales thus made should be set aside. Taking the value as shown even by the

rebuttal witness, Gorenflo, the sale price was a mere nominal price, amounting to no more than if it had been any other nominal sum such as one dollar.

According to some of the testimony, which the jury was warranted in believing, the property sold was of the value of eighteen thousand two hundred ten dollars, and, according to the evidence of Mr. Gorenflo, an adverse witness, who was familiar with the business of the Dunbar Du Kate Company the property was certainly worth three thousand and thirty-five dollars. Consequently, the sale of said stock for two hundred dollars would, even under that value, be so grossly inadequate as to constitute a fraud.

We think the case of Federal Land Bank v. Robinson, 160 Miss. 546, 134 So. 180, 184, is sufficient to uphold the verdict of the jury in this case. There the court said:

"The evidence in this case shows that at the time of the second sale five thousand dollars was wholly inadequate as a price for the land. No actual fraud was committed by the bank and its officers in this transaction; but the whole proceeding was, in effect, a legal fraud upon the rights of the mortgagor, since he was advised that his debt had been adjusted, and then, without notice, by proceedings of which he was unaware, the mortgagee changed his liability for some twenty thousand dollars in a material manner, and materially altered the situation without notice to him. . . . We think it is not seriously denied that recoupment was the proper plea in this case. Neither can it be doubted that the injured mortgagor who has been damaged by a fraudulent sale for an inadequate price, without notice thereof, may either file his bill in equity to set aside the sale or sue at law for the damages sustained by him; or, if sued, he may, by way of recoupment, diminish his debt; or, if the damages sustained by him are equal to or exceed the amount of the debt, he may extinguish same. See Myers v. Estell, 47 Miss. 4; Rogers v. Barnes, 169

Mass. 179, 47 N. E. 602, 38 L. R. A. 145; Burnett v. Dunn Commission & Supply Co., 180 N. C. 117, 104 S. E. 137; Dwyer v. Rohan, 99 Mo. App. 120, 73 S. W. 384; Mo. Real Estate Syndicate v. Sims, 179 Mo. 679, 78 S. W. 1006; O'Brien v. Logan, 236 Mass. 507, 128 N. E. 878.'' See, also, Hesdorffer v. Welsh, 127 Miss. 261, 90 So. 3, and Foster v. Campbell, 145 Miss. 502, 113 So. 550.

We have examined the instructions and find no reversible error therein. The instructions for the appellant were more liberal than it was entitled to under the facts of this case. The instructions as to the right of sale at a private sale, and the purchase thereof, had no relation to the issues here, which revolved about an election to resort to a public sale. The appellant requested an instruction, which the court gave with a modification. We think the modification was proper under the evidence in this case, and that the court committed no error in modifying the instruction. The judgment of the court below will therefore be affirmed.

Affirmed.