RAMON, et ux. *v.* MITCHELL, et al.

No. 40022          March 26, 1956          86 So. 2d 315

*D. O. Simmons,* Gulfport; *Pete H. Carrubba,* Long Beach, for appellants.

*Ebb J. Ford, Jr.,* Gulfport, for appellees.

McGehee, C. J.

This is an appeal from the action of the trial court in sustaining a demurrer to a second amended bill of complaint, and dismissing the suit upon the failure of the complainants E. V. Ramon and wife to plead further.

The purpose of the bill of complaint is to have set aside and cancelled the foreclosure sale of certain real estate in the town of Long Beach, which was sold under a deed of trust given by the complainants in favor of Thomas A. Mitchell and Alice L. Mitchell to secure a promissory note for the sum of $2,850.00 dated December 15, 1952, and due on or before December 1, 1953. The bill of complaint also names as defendants Knox White,

Trustee, and E. J. Ford, Jr., attorney for the Mitchells who had filed a suit for the latter on the note in the Circuit Court of Harrison County prior to the commencement of the proceedings by the trustee to foreclose the deed of trust in pais.

This second amended bill of complaint alleges that the trustee in the deed of trust had been instructed to foreclose the same subsequent to the filing of the suit on the note in the circuit court; that the complainants immediately began to look for a buyer of said property in order to save it from foreclosure; that two days before the sale O. H. Burns had agreed to buy said property from the complainants for the sum of $3,063.74, which represented the exact amount then due as principal and interest on the note, but did not include any attorney's fee that may have been provided for in the note nor any costs that may have been incurred in the advertisement of the property for sale under the deed of trust; and that the defendants Thomas A. Mitchell and wife were notified of the agreement of O. H. Burns to buy the property, and that they agreed for the private sale to be made to Burns and to discontinue the foreclosure sale and the lawsuit. Naturally the complainants would have expected that the said $3,063.74 be credited on the indebtedness, which would have been fair and equitable had the private sale been consummated.

And the bill then alleges that just two days before the foreclosure sale was scheduled to be made, the complainants and O. H. Burns met in the law office of the trustee for the purpose of closing the sale, but that they were advised by the trustee that the Mitchells were not agreeable to the private sale, and that the trustee advised the complainants that the Mitchells would require the payment of the sum of $3,370.12 to stop the sale; that the complainants were thereupon left under the impression that in order to prevent the foreclosure sale they would have to have that amount in cash; and that

since the complainants did not have said sum of money they did not appear at the sale and took no part therein.

It is not alleged that the proposal of O. H. Burns to buy the property from the complainants was in writing, or that he was otherwise legally bound to pay for the property at a private sale, but we must assume on demurrer that he was acting in good faith in making the offer. The $3,370.12 demanded was doubtless an amount that would include not only the principal and interest due on the note, offered by Burns for the property two days before the sale, but also an attorney's fee and the cost of advertising the property for sale, etc. It is not alleged that the proposed purchaser O. H. Burns had agreed to pay more than $3,063.74. Therefore, when the complainants and O. H. Burns went to the law office of the trustee Knox White for the purpose of closing the sale, the Mitchells were acting within their legal rights in declining to accept less than the full amount due as principal, interest, attorney's fee, etc., but if they induced Burns not to appear as a bidder at the sale by reason of their promise to sell the property to him for less than he had previously offered, and then bought it themselves at the sale for only $100.00, then the same should not, in equity and good conscience, be allowed to stand.

If the allegations of this amended bill should be sustained by proof then the complainants would be entitled to have the property resold at public sale to the highest and best bidder therefor in order that they may receive credit for such an amount as the property would bring at a fair sale, instead of a credit merely for the nominal amount brought at the sale complained of. ▮▮▮ While mere inadequacy of the price brought at a foreclosure sale in pais may not of itself be a sufficient reason for setting aside the sale, such fact when taken into consideration with the other allegations of the amended bill, if established by a preponderance of the evidence, would be

sufficient for said purpose. The principles announced in the following authorities are persuasive in support of our view of this case, although it may be difficult to lay down a general rule on the question of inadquacy of price as a ground for setting aside a foreclosure sale in pais, to wit: Herring v. Sutton, 86 Miss. 283, 38 So. 235; Weyburn v. Watkins, 90 Miss. 728, 44 So. 145; Hesdorffer v. Welch, 127 Miss. 261, 90 So. 3; Foster v. Campbell, 145 Miss. 502, 111 So. 148; Triplett v. Bridgforth, 205 Miss. 328, 38 So. 2d 756; and 59 C. J. S., Sec. 601 (2), page 1055. ██ ██ We realize that the factual situation in those cases is not the same as that disclosed in the instant case, but as the Court said in Herring v. Sutton, supra: ''We base our decision in this matter upon the general principle which requires a court of equity in the exercise of a broad discretion to see that 'wrong and oppression are not inflicted under the guise of legal procedure, but that justice is done as the very right of every case may demand.''

It is clearly alleged in this amended bill that before the foreclosure sale, the Mitchells did in fact contact the said O. H. Burns and inform him that they would purchase the property at the foreclosure sale and would thereafter sell it to him for less than what he had theretofore agreed to pay the complainants for the same. And the bill alleges that for this reason the said O. H. Burns did not appear at the foreclosure sale and bid for the property, and with the result that the Mitchells bought the property at the foreclosure sale for the grossly inadequate consideration of $100.00, two days after they had an opportunity to realize $3,063.74 therefor.

The bill also alleges that in the circuit court suit the Mitchells, as plaintiffs therein, had demanded judgment on the note in the amount of $3,270.12, ''and were granted a judgment in that amount on          1954''.

The bill then alleges that unless the court should set aside the foreclosure sale, which was made at the grossly

inadequate price of $100.00, the result will be that the Mitchells will get the property sold under the deed of trust, which is alleged to be "worth easily the sum of $3,000.00" and would "most probably collect an additional amount of $3,270.12" in the action in the circuit court.

Wherefore the appellants urged that the trial court was in error in sustaining the demurrer to this second amended bill of complaint and in dismissing their suit to set aside the foreclosure sale.

██ ██ Ordinarily it is necessary in a bill to set aside a foreclosure in pais either because of defects in the proceedings or because of grossly inadequate price at the sale accompanied with other alleged inequities, that a tender of the indebtedness should be made to the creditor. ██ ██ However, under all of the allegations of the bill of complaint in the case at bar, the complainants were entitled to elect to permit the property to be sold at a fair sale and take credit on the indebtedness for its reasonable market value at a forced sale, or in the alternative to have the property resold in view of the circumstances alleged in their amended bill of complaint in order that they may receive a fair and proper credit for the property on their indebtedness. We do not think that their inability to make the tender under the circumstances hereinbefore discussed should result in a denial to them of any relief against the defendants for having acquired property worth at least $3,000.00 for the mere nominal consideration of $100.00, and then leaving complainants indebted to the defendants for the difference between $100.00 and the amount of the judgment obtained in the circuit court hereinbefore mentioned.

We are not unmindful of what was held in the case of Rea v. O'Bannon, 171 Miss. 824, 158 So. 916, which recognizes the right of a mortgagee to pursue both a legal and an equitable remedy, when they are not inconsistent with each other, and where the exercise of both

remedies may reasonably be deemed necessary for the protection of the rights of the mortgagee in the enforcement of the collection of an indebtedness, but we do not think that the Rea v. O'Bannon case would deny the complainants the relief sought under the facts alleged in their bill of complaint, if they are able to establish the same by proof upon a trial.

We have concluded that the case should be reversed and remanded for trial upon the amended bill, an answer, and on proof as to the merits of the complaint.

Reversed and remanded.

*Hall, Kyle, Arrington* and *Gillespie, JJ.,* concur.