## MISSOURI REAL ESTATE SYNDICATE, Appellant, v. SIMS.

### Division One, February 10, 1904.

1. **Mortgage Debt**: EXTENSION: SUIT FOR DAMAGES. · For the breach of an agreement to extend the time of payment of a mortgage note, supported by a valid consideration, the mortgagor may maintain an action at law for damages.

2. ———: ———: ———: EQUITABLE REMEDY. And the fact that the payee of the note bought in the property at the trustee's sale and thereby the mortgagor could have maintained a suit in equity to have the sale set aside, does not bar him from maintaining his action at law for damages for a breach of the agreement to extend. He is not limited to his remedy in equity.

3. ———: ———: ———: RIGHT OF SUBSEQUENT PURCHASER. A contract with the owner of land to extend the time for the payment of a mortgage debt passes to a subsequent purchaser of the land who buys subject to the debt, and for a breach of that contract by the original payee within the time of the extension, the subsequent purchaser may maintain a suit for damages.

4. ———: ———: CONTRACT IN WRITING: DEMURRER. Where the petition states that a contract was made to extend a mortgage note for a valid consideration which was paid, a demurrer to a petition demanding damages for its breach should not be sustained on the ground that the petition does not allege that the contract was in writing. The Statute of Frauds should be pleaded.

5. ———: ———: USURY. Nor can the fact that the consideration for the extension, when added to the interest borne by the mortgage debt, amounts to usury, bar the suit for damages. The law which forbids the taking of interest beyond a certain rate for the use or forbearance of money is made solely for the protection of the debtor. The usurer can not set up his usury for the purpose of avoiding any of his undertakings or liabilities.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville,* Judge.

REVERSED AND REMANDED.

*Heffernan & Heffernan* and *Gideon & Gideon* for appellant.

(1)   A sale before the debt is due is void. Long v. Long, 79 Mo. 644; Eitelgeorge v. Assn., 69 Mo. 55. By a foreclosure of a deed of trust the legal title passes to the purchaser, although the sale thereunder may be irregular as not to extinguish the mortgagor's equity of redemption. Long v. Long, 141 Mo. 352. An agreement made before the time of redemption has expired to allow further time, though made without consideration, can not be disregarded after the time of redemption has passed, but will be enforced by the court. Jones on Mortgages, secs. 1053, 1189; Davis v. Dresback, 81 Ill. 393; Ross v. Southerland, 81 Ill. 275; Dodge v. Brewer, 31 Mich. 227. A verbal agreement to extend the time of payment is binding, and suspends the right to foreclose if founded on a good consideration. Jones on Mortgages, sec. 1190. Any expense, trouble or inconvenience experienced by plaintiff makes the consideration valuable in law. Brown v. Cory, 74 Mo. App. 462; Brownlow v. Wollard, 66 Mo. App. 636; Wirt v. Sherman, 67 Mo. App. 172. (2)   Plaintiff's contract imports a good consideration. Carter v. Foster, 145 Mo. 383; 1 Chitty on Contracts (11 Ed.), p. 36; Glasscock v. Glasscock, 66 Mo. 631; Cass Co. v. Oldham, 75 Mo. 50; Martin v. Nixon, 92 Mo. 26; Calkins v. Chandler, 36 Mich. 320. Payment of interest in advance is a sufficient consideration for extension of note to a fixed time. Nelson v. Brown, 140 Mo. 580; Ins. Co. v. Hauch, 71 Mo. 465. (3)   It was not necessary to have all contracts in writing. A written agreement is not alleged, nor was it necessary to allege that the agreement to sell

was in writing. Assn. v. Dubach, 81 Mo. 479. The measure of damages is the value of the property taken. 1 Sutherland on Damages, p. 173; Forwell v. Price, 30 Mo. 587.

*Benj. U. Massey* for respondent.

(1) The first count asks for damages for the wrongful conversion of real estate. An anomaly in pleading. If the foreclosure sale was legal, no cause of action of any kind would lie. If such sale was made before the debt secured was due, it was without authority and void, and entry by Sims was without right, and wrongful. In such an event, plaintiff could recover in an action of forcible entry and detainer, or in an action of ejectment, or for redemption from said deed of trust, just as if Sims had entered upon plaintiff's possession without excuse of trustee's sale, or authority of the deed of trust made thereunder. (2) Plaintiff was not privy to the contract of extension made between Sims and the Springfield Milling Company. Plaintiff did not assume or agree with Sims, or with any one else, to pay said note or any interest thereon and was in no way a party to that note by reason of any assumption of or agreement on his part to pay it; consequently the extension made to the milling company did not inure to the benefit of said plaintiff, and the debt was past due when the deed of trust was foreclosed. (3) There was no extension of time of the payment of this $4,000 note made between the plaintiff and defendant. The leasing of the third story of the building by plaintiff and defendant to the Odd Fellows did not operate as an agreement for such extension, nor did the making of improvements on the building, so operate. Agreements for extension of time of payment beyond the time stated in the instrument itself must be based upon a valuable consideration, and the period of extensions must be certain.

VALLIANT, J.—This is an appeal from the judgment of the circuit court on sustaining a demurrer to the plaintiff's petition, the plaintiff declining to plead further.

The cause stated in the petition is an action at law for damages for the breach of a contract to extend a mortgage note.

The substantial averments in the petition are to the effect as follows: On December 12, 1894, one George P. Miller, being then the owner of certain real estate in the city of Springfield, executed his note for $4,000, due in two years, bearing eight per cent interest from date, payable to one George Lawrence, and a deed conveying the real estate to one James Bray as trustee to secure the note; that afterwards Miller conveyed the property to one Kerr, subject to the deed of trust, and Kerr conveyed it in like condition to a corporation called the Springfield Milling Company; that in 1895 the holder of the $4,000 note sold it to the defendant Sims; that while the defendant was the owner of the note, and the Springfield Milling Company the owner of the property subject to the deed of trust, the latter made a contract with the former to extend the note for a period of five years from the date of its face maturity, that is, from December 12, 1896, to December 12, 1901, the consideration for the extension being one hundred dollars, which the Milling Company then and thereupon paid the defendant; that afterwards the Milling Company sold the property to one Coombs, who assumed the payment of the note, and Coombs sold it to other parties who also assumed the payment of the note, and they, on February 16, 1899, sold it to the plaintiff for $6,000, subject to the deed of trust; that plaintiff bought with knowledge of the contract for the extension, and with the knowledge and consent of the defendant, and after so purchasing, the plaintiff, with the knowledge, consent and approval of the defendant, put extensive and valuable improvements specified on the property, and made a lease for

a term of ten years of the third floor of the building with like knowledge and consent of the defendant, he in fact signing the lease, and agreeing that his deed of trust ''should be subject to the terms and conditions of said lease;'' that afterwards, although the plaintiff had fully complied with all the other terms of the deed of trust, the defendant in violation of his agreement to extend the note did, in July, 1900, instigate the trustee to sell the property under the terms of the deed of trust, and at the sale the defendant became the purchaser for $1,000, received the trustee's deed therefor, entered into possession and has so continued, collecting the rents, etc.; that at the date of the sale the property was worth $8,000, or $4,000 over and above the deed of trust debt, and, therefore, by the defendant's act the plaintiff was damaged in the sum of $4,000, for which judgment was prayed.

There were three other counts in the petition predicated on the same facts, and the breach of the agreement to extend the note. The court sustained the demurrer as to the first, second and fourth counts, and overruled it as to the third, whereupon the plaintiff took a voluntary nonsuit as to the third count, and declined to plead further. The court then rendered final judgment for the defendant, from which judgment the plaintiff prosecutes this appeal.

If the agreement for the extension of the note was supported by a valid consideration the petition stated a good cause of action and the demurrer should have been overruled. The agreement for extension not appearing on the face of the record, a sale by the trustee at a date when the note, as appeared on its face, was due and unpaid, would have carried to an innocent purchaser without notice a good title. As, however, the defendant himself became the purchaser, the plaintiff could have successfully attacked his title by a suit in equity and have set the same aside; assuming of course, as we must in the face of the demurrer, that the facts

pleaded are true, and that there were no other facts to alter the case. But the plaintiff was not limited to that remedy in equity; if the defendant had violated his agreement and sold the plaintiff's property when he had no right to do so, the plaintiff was entitled to his action at law for damages as for a breach of the contract. [Sherwood v. Saxton, 63 Mo. 78.] In the case cited the suit was against the trustee for misconduct in the sale of the plaintiff's land under a deed of trust. The court, recognizing the right to equitable relief, said: ''In many cases, even where the remedies are concurrent, the legal tribunal is more complete and satisfactory than the equitable one. This case is a good example. Should the plaintiff commence his suit in equity, he might set aside the second sale and redeem the land by paying up the indebtedness. But in the meantime the land may have greatly depreciated in value, so that it would be impossible to restore him to what he has lost by the defendant's breach of his trust. An action at law, then, for damages, is the most ample, complete and simple remedy.''

The contract for extension was made between the owner of the land and the holder of the mortgage note. The only concern the owner of the land had with the note arose out of the fact that it was an incumbrance on his land; his contract for the extension was for the sole purpose of postponing the date at which his land could be sold to satisfy the note; it was, therefore, a contract affecting the incumbrance on the land, and the effect the contract had on that incumbrance was not limited to the period of the ownership of the then owner, but passed to the assignee who took the property subject to the incumbrance.

The contract was for an extension for a definite number of years, and it applied to the incumbrance in whosesoever hands the title to the land might go during that period. It applied to the incumbrance while the title was held by the plaintiff in this case. What would

have been the effect if the note had been transferred before maturity to an innocent purchaser without notice we need not consider, for such was not this case.

The petition does not state that the contract was in writing, but it is unnecessary for us to consider that point, because even if the statute of frauds applied to such case, the point is not raised by the demurrer. The petition states that the contract was made and that the whole consideration, $100, was paid to the defendant. The defendant by his demurrer admits that to be the fact. If under that condition the defendant thinks that the statute of frauds has anything to do with the case, it is his privilege to plead it. [Maybee v. Moore, 90 Mo. 340.]

The question remaining is, was the contract for extension supported by a valid consideration? The note in its face bore all the interest that our law allows; the payment, therefore, of $100 bonus for the forbearance was the payment of usury.

If the defendant, instead of receiving the $100 in cash at the time of making the contract, had taken the promise of the Springfield Milling Company to pay that sum, and had on the faith of that promise actually forborne the foreclosure until the expiration of five years as agreed, and had then sued the Milling Company for the bonus promised, he could not have recovered it, because the amount of the bonus was that much more than the law allows the creditor to take for the forbearance of his debt. If, then, the defendant in such case after he had wholly performed the contract on his part could not recover the consideration upon which his contract was founded because the consideration was illegal, how can he be required in law to perform his part of the contract when he refuses to do so after having received the illegal consideration? If the consideration is so illegal as that one party who has received the full benefit of the contract can not be compelled to perform his part of it, how can the other party be compelled

to perform his agreement when the facts are that it is he who has received the full benefit and yet refuses to perform his part?

The answer to those questions is found in the peculiar character of the law governing the subject of usury. The law which forbids the taking of interest beyond a certain rate for the use or forbearance of money is made solely for the protection of the debtor; if he sees fit to pay more than the law allows, he may do so and the person to whom it is paid can not retain it and at the same time say that it is illegal. No one but the debtor or his privies in blood, contract or representation can interpose the defense of usury. [Coleman v. Cole, 158 Mo. 253.] In 27 Am. and Eng. Ency. Law (1 Ed.), 949, 950, the law is thus stated: "It is settled by a multitude of decisions that the right to plead usury is a privilege personal to the debtor. The defense has been compared to that of infancy. The rule that parties *in pari delicto* are both equally precluded from assistance by the courts, does not apply against a borrower or debtor who has paid or agreed to pay usury. It is deemed that his consent to the corrupt contract was obtained by moral duress such as to take from him the character of *particeps criminis*. To hold otherwise would render usury laws nugatory. . . . Being an offender against the law, the usurer is not under any circumstances permitted to set up his own usury for the purpose of avoiding any of his undertakings or liabilities connected with the usurious transaction; what he has done or bound himself to do, he must stand by, as if no usury were involved."

We hold that the contract for the extension of the note was supported by a valid consideration. The petition stated facts which constituted a cause of action and therefore the court erred in sustaining the demurrer.

The judgment is reversed and the cause remanded to be proceeded with according to the law as above expressed. All concur.