MAURICE EWING and ELSIE EWING, Respondents, v. MYRON A. McINTOSH, J. A. McINTOSH, LOUIS W. KEPPLEMAN, AMELIA K. KEPPLEMAN, JUNE HILLIARD, and CARRIE M. McINTOSH, Appellants, No. 41342—222 S. W. (2d) 738.

Division One, September 12, 1949.

*L. S. Dewey* and *Robert Stemmons* for appellants.

*Dale Tourtelot* and *Russell Mallett* for respondents.

BRADLEY, C.—Action to set aside a trustee's deed to lots 16 and 17, James T. Turk's Addition, Joplin, and to reinstate the deed of trust foreclosed; the trial chancellor set aside the trustee's deed and reinstated the deed of trust; defendants appealed.

Plaintiffs (respondents) are husband and wife. The defendants (appellants) sustain the following relation: Appellants J. A. and Carrie M. McIntosh are husband and wife and the father and mother of appellant Myron A. McIntosh; appellants Louis W. and Amelia K. Keppleman are husband and wife; Amelia K. is a sister of Carrie

M. McIntosh; appellant June Hilliard was the secretary in the real estate office in Joplin of J. A. McIntosh and his son Myron, and June was the straw party payee in the note secured by the deed of trust which was foreclosed.

A few years prior to the foreclosure respondents purchased the lots from appellant J. A. McIntosh; purchase price was $1700.00; they did not get a deed at that time; purchased on a contract. They were to pay $15.00 per month on the purchase price. December 5, 1946, they owed $1236.77, and on that date they received a deed, and executed the deed of trust foreclosed. The deed of trust secured a six percent note for the $1236.77, payable at $15.00 per month from January 1, 1947. Appellant Myron A. McIntosh was named as trustee in the deed of trust, and as stated, June Hilliard, a straw party, was named as payee in the note and beneficiary in the deed of trust. Unknown to respondents, according to their evidence, the deed of trust was foreclosed by the trustee September 20, 1947, and a trustee's deed made to the appellants Keppleman; J. A. McIntosh bid $1200.00 purportedly for the Kepplemans. Notice of foreclosure ▮▮▮ was published in the weekly Carl Junction Standard which respondents say was not a newspaper of general circulation. October 4, 1947, two weeks after the foreclosure sale and execution of the trustee's deed, the Kepplemans conveyed the lots to appellants J. A. and Carrie M. McIntosh for the recited consideration of "one dollar and other valuable consideration". The evidence showed that the lots at the time of the foreclosure were worth $3500.00 to $4000.00.

Respondents allege that the conduct of appellants, especially that of J. A. and Myron, respecting the foreclosure, was a fraud upon them; it is alleged that in early August, 1947, respondent Elsie Ewing and her daughter went to the real estate office in Joplin of J. A. and Myron; that both were present; that Elsie stated to J. A. and Myron that she and her husband wanted to make some repairs on the house; paint and paper it, etc., but that if they did the repairing they could not make the payments for two or three months; that J. A. and Myron "assured her that it would be all right to make the improvements"; that they "assured her that no action would be taken to foreclose said property"; that respondents, "relying on these promises . . . did not make any payments on said note and deed of trust" during the period of repairs; that on October 6, 1947, "plaintiffs sent $45.00 to the office" of J. A. and Myron for payment on the note and deed of trust and "for the first time learned that said property had been sold".

Respondent Elsie Ewing testified: "My husband and I live at 2609 East Fifth Street, Joplin (the property involved); we have lived there six years last February; we purchased the property from J. A. McIntosh on contract; we got a deed last December; the title was taken in our names jointly; we gave a mortgage (deed of trust) on

the property for $1200.00 ($1236.77); this last summer we painted and repapered the house and put a roof on the garage; and since we have been there we have made the house modern. About October 6th (1947) I learned from my daughter that the property had been sold under the mortgage; I went over there (to the McIntosh office) and J. A. McIntosh said there was $75.00 due against the place; I said, 'Well, I can get you $75.00 if you want it', and he said, 'No, it is too late now; I don't want the money; I want the place'. . . .

"I had a conversation with J. A. McIntosh and Myron McIntosh about the first of August (1947); before we did any work on the place I went up there and saw him (J. A.) about refinancing it; I spoke to him about it; the place needed work done on it; he said 'no' at first; then he said, 'I will see about it'; then he said, 'No, we will just let it go, and you go ahead and do the work on your place and your payments will be all right until after the work is done'; right after that we started in and did all of the work. I trusted Mr. McIntosh (J. A.); I traded with him for six years and had no trouble with him; I never even thought of such a thing (foreclosure) until my daughter went up there that day; all my payments were made to J. A. McIntosh."

Mrs. Mercedes Potter, Elsie's daughter, testified that she was with her mother when she (the mother) had the conversation with J. A. McIntosh related by her (the mother) and corroborates the mother as to what was said, etc. As to what J. A. McIntosh said when she (the daughter) went up with the $45.00, she testified: "Mother sent me to make three payments, $45.00, and he (J. A. McIntosh) wouldn't accept the money; he said he had started foreclosure; I ask him how much was due on the place and he said $75.00." There were other witnesses who testified that the repairs were made about as respondents say. Respondents consulted counsel perhaps on the same day that J. A. McIntosh refused to accept the $45.00. Myron A. McIntosh, trustee in the deed of trust, as a witness for appellants, testified that on June 11, 21, and July 17, 1947, he mailed to respondent, Maurice Ewing, notices of the delinquency of payments on the note secured by the deed of trust foreclosed; copies of these notices were in evidence and appear to be signed by J. A. McIntosh. According to Myron the notice of July 17th was sent by registered mail, and a register return receipt bearing the name of Maurice Ewing and dated July 18th, was introduced in evidence. But the Ewings denied receiving these notices and denied that the signature on the return receipt was by Maurice Ewing, or by any member of the family; there was no evidence to the contrary. The copies of the notices as they appear in the record bear the correct address of respondents.

In addition to testifying about the notices of delinquency of payments Myron testified: "I kept track of the payments on the prop-

erty; only two payments were made in 1947; one February 17th and one May 5th; they never paid the taxes for 1945 and 1946; June Hilliard, payee in the mortgage note, was the secretary in our office; she was a straw party; we handled it that way in order to keep the party's name, loaning the money, out of it so they don't have any letters written back and forth or anything like that that might not be pleasant. Amelia and Louis Keppleman became the owners of the note. I do not remember anything about Mrs. Ewing coming to our office and talking about painting and redecorating the house. I foreclosed the deed of trust; my father and I were the only ones present at the sale; he bid the property in for Louis W. and Amelia Keppleman; there was only one bid."

Neither of the Kepplemans were present at the trial; J. A. McIntosh was present but did not testify. Respondents' attorney, Mr. Tourtelot, before the suit was filed, sought to ascertain the address of the Kepplemans; J. A. McIntosh told him that their address was "somewhere on Hamilton Street" in St. Louis; that he did not know the street number. Later respondents took the deposition of J. A. and Myron, and ascertained that the Kepplemans resided at Bourbon, Missouri, and had so resided all the time concerned here.

Appellants stand on these propositions: (1). That fraud is not to be presumed, but must be proved; (2) that an extension agreement of a past due indebtedness, in order to be valid, must extend to a definite date; (3) that one authorized to receive a payment is not thereby empowered to extend the time of payment; (4) that mere inadequacy of bid is not sufficient ground to set aside the foreclosure sale; (5) that the trustee who forecloses a deed of trust is not required to see that bidders attend the sale or to give the grantor personal notice of the sale; (6) that publishing the notice of sale in the Carl Junction Standard was sufficient. As supporting these propositions appellants cite: (1), (2) Dobbins et al. v. City Bond & Mortgage Co. et al., 343 Mo. 1001, 124 S. W. (2d) 1111, l. c. 1115, 1116; (3) Bennett v. Royal Union Mut. Life Ins. Co. et al., 232 Mo. App. 1027, 112 S. W. (2d) 134, l. c. 143; 2 C. J. S., Agency, Sec. 107, p. 1282; 2 Am. Jur., Agency, Sec. 172, p. 137-138; (4) Judah et ux. v. Pitts et al., 333 Mo. 301, 62 S. W. (2d) 715, l. c. 720; (5) Harlin v. Nation et al., 126 Mo. 97, 27 S. W. 330; Jopling et al. v. Walton, 138 Mo. 485, 40 S. W. 99; (6) Sec. 3464 R. S. 1939, Mo. RSA Sec. 3464, as amended Laws 1943, p. 402.

█ It will not be necessary to review the cases or quote the texts cited; it will be conceded that appellants' propositions are sound in principle. There was no evidence on the circulation of the Carl Junction Standard, hence the sufficiency of the publication is not involved. But the trouble is that the facts in the present case are such that these sound principles of law cannot be invoked to sustain the foreclosure sale here challenged. Appellants proceed on the assump-

tion that the Kepplemans owned the note and deed of trust; that J. A. McIntosh was no more than a collector. It is true that there was evidence that the Kepplemans owned the note and deed of trust. But on the other hand there were facts and circumstances from which it could be inferred, we think, that J. A. McIntosh was the owner of the note and deed of trust all the time. These facts and circumstances are: (1) Respondents purchased the property from J. A. McIntosh, so Mrs. Ewing testified, and there was no evidence to the contrary; (2) all the payments were made to J. A. McIntosh; (3) J. A. McIntosh was deceptive about the address of the Kepplemans; ▆▆▆ (4) neither of the Kepplemans attended the trial or gave their deposition; (5) the Kepplemans conveyed the property to J. A. and Carrie McIntosh two weeks after foreclosure for "one dollar and other valuable consideration"; (6) J. A. McIntosh was present at the trial but did not testify. The failure of a party having knowledge of facts and circumstances vitally affecting the issues on trial to testify in his own behalf or to call witnesses, within his power to call, who have knowledge of such facts and circumstances, raises a strong presumption and inference that the evidence of such persons, including himself, would have been unfavorable. Russell v. Franks et al., 343 Mo. 159, 120 S. W. (2d) 37, l. c. 41, and cases there cited; Bostwick v. Freeman, 349 Mo. 1, 160 S. W. (2d) 713, l. c. 718; O'Day et al. v. Van Leeuwen et al., 354 Mo. 604, 190 S. W. (2d) 263, l. c. 265.

▆▆ The case of Shumate v. Hoefner et al., 347 Mo. 391, 147 S. W. (2d) 640, was to set aside a trustee's deed, and is somewhat similar on the facts to the present case. Shumate had purchased the property on contract which mentioned a first deed of trust thereon, but not a second. Thereafter Shumate received a letter from the holder of the second deed of trust stating that he held a second deed of trust on the property and that a balance of $50.00 principal and $30.50 interest was due. Shumate went to the holder of the second; told him he would pay the amount; that he wanted time to confer with his vendor, but would pay any time the holder of the second would call at his, Shumate's, store. This arrangement was agreed to, but notwithstanding the agreement with the holder of the second deed of trust, and unknown to Shumate, the second deed of trust was foreclosed. The trustee's deed was set aside; it was held that when a mortgage lulls the owner of the equity of redemption into a sense of security that there will be no foreclosure and then forecloses the mortgage without giving actual notice to the owner, the foreclosure will be set aside. Such is the situation here and such, in effect, is what the trial chancellor found.

According to Mrs. Ewing, Myron McIntosh, the trustee, was present when she had the understanding with his father to the effect that there would be no complaint about payments while the repair work was being done. "Trustees are considered as the agents of both

parties—debtor and creditor—and their action in performing the duties of their trust should be conducted with the strictest impartiality and integrity. They are intrusted with the important function of transferring one man's property to another, and therefore both reason and justice will exact of them the most scrupulous fidelity. Courts of equity have always watched their proceedings with a jealous and scrutinizing eye; and where it is clearly shown that they have abused their trust, or combined with one party to the detriment of the other, relief will be granted." West v. Axtell et al., 322 Mo. 401, 17 S. W. (2d) 328, l. c. 334.

Respondent Maurice Ewing testified that if the court set aside the trustee's deed and reinstated the deed of trust he was "ready and willing, in a reasonable time, to raise the money to pay off this deed of trust". The judgment of the trial court setting aside the trustee's deed and reinstating the deed of trust should be affirmed, and the cause remanded so the trial court may take such action as may be just and reasonable as to respondents paying off the mortgage debt or making such other arrangements as may be satisfactory. It is so ordered. *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.