John T. EDWARDS and Mary Jane Edwards, Appellants,

v.

Robert SMITH, III, Anna E. Smith and S. L. Sommers, Respondents.

No. 46931.

Supreme Court of Missouri,

Division No. 1.

March 9, 1959.

Rehearing Denied April 13, 1959.

Stanley I. Dale, Whitney W. Potter, St. Joseph, for appellants.

F. V. Worden, Strop & Strop, St. Joseph, for respondents Robert Smith, III, and Anna E. Smith.

John C. Landis, III, St. Joseph, for respondent Sommers.

HOLMAN, Commissioner.

Action by plaintiffs, John T. and Mary Jane Edwards, husband and wife, for $25,- 000 actual and $25,000 punitive damages for the alleged wrongful foreclosure of a deed of trust. Plaintiffs were the mortgagors, defendants Robert Smith III and Anna E., his wife, the mortgagees, and defendant S. L. Sommers, the trustee. At the close of all of the evidence the plaintiffs filed a motion for a directed verdict on the issue of liability which was overruled, and the defendants also filed motions seeking a directed verdict in their favor which were likewise overruled. Thereafter, the court, apparently of its own motion, dismissed the cause, discharged the jury, and entered judgment for defendants. Plaintiffs have appealed.

Plaintiff John T. Edwards testified that he had been territory manager for D-X Sunray Oil Company at St. Joseph, Missouri, from January 1951 until April 1957 when he was transferred to Tupelo, Mississippi; that on May 6, 1955, he and his wife purchased from the Smiths a residence located at 3215 Neighbor Road in St. Joseph, for $16,000; that as a part of the consideration for the property plaintiffs assumed a first deed of trust to the Provident Savings and Loan Association, upon which was due something in excess of $12,000, and executed a note in the amount of $2,704.97, payable to the Smiths, and secured by a second deed of trust describing the property in question. The last-mentioned note and deed of trust are the instruments primarily involved in this case.

The note given by plaintiffs to the Smiths on May 6, 1955, was payable in installments at the rate of $15 on the first day of June 1955, and a like amount on the first day of each succeeding month thereafter. The note provided for interest at the rate of 5% and further provided that the payments of $15 per month were to be applied first to the payment of interest and the balance to the principal. The note also contained the following provision: "Privilege is hereby given to the makers to pay $15 or any multiple thereof on the principal at any interest paying date." It also contained an acceleration clause providing that "in case of de-

fault in the payment of any installment when due, the whole amount remaining unpaid, at the option of the legal holder of this note, shall immediately become due and payable."

Plaintiffs offered to prove by Mr. Edwards that just prior to the signing of the above-described note he stated to Mr. Smith that he received bonus checks at infrequent intervals from his employer and that he contemplated making the $15 monthly payments out of the proceeds of those bonus checks, and in order to make the deal that method of payment would have to be satisfactory with the defendants; that Mr. Smith said that such an arrangement would be satisfactory and he would not foreclose if there were late payments but would accept the multiple payments as the bonus checks were received. The court sustained an objection to that offer. Thereafter, plaintiffs offered to prove by Mr. Edwards that substantially the same conversation was had and the same agreement made shortly after the signing of the instant note, but objection was also sustained to that offer of proof.

It appears that on May 31, 1955, plaintiffs paid the sum of $500 upon the Smith note. None of the payments made by plaintiffs were actually credited upon the note but plaintiffs were given a passbook in which Mr. Smith entered each payment. The pages of this book contained columns showing the date of the payment, the amount of interest paid, the amount of principal paid, the amount of the total payment, and the balance due. The $500 payment heretofore mentioned was entered only in the total payment column but was obviously credited upon the principal, as the balance due on that date was shown to be $2,204.97. The remainder of the payments shown on this book were entered, for the most part, as of the date they were due and not the date of actual payment. However, plaintiffs offered in evidence checks showing the further payments made on the note, which payments were as follows: 8–18–55, $15; 11–30–55, $75; 2–26–56, $15; 3–23–56, $15; 6–1–56, $15; 7–13–56, $15; 9–28–56, $15; 10–4–56, $75; 1–25–57, $60; 3–8–57, $15.

After Mr. Edwards was transferred to Mississippi in the spring of 1957, Mrs. Edwards remained in the home in St. Joseph until about June 1 when the children finished the school year. Shortly after Mr. Edwards was transferred to Mississippi the property in question was placed on the market for sale and for a time was listed with a number of real estate men, including defendant Smith. However, before Mrs. Edwards left St. Joseph, an exclusive listing was given to Carl Walter. There is evidence that defendant Smith thereafter sought an exclusive listing but was advised that such a listing had been given to Mr. Walter.

Mr. Edwards testified that on July 5 (while in Mississippi) he received a letter from defendant Robert Smith, dated June 29, which reads as follows: "Your letter of June 27th, postmarked Columbus, Miss., has just reached us. Sorry it is necessary for us to tell you that the note covering your loan is no longer under our control. First, our accountant when going over our books was inclined to be critical of us for allowing delinquent payments to accumulate to the extent of more than three months, making it necessary for us to explain that we had talked with you and had written to you in repeated efforts to get the payments. As a consequence, the trustee, Mr. S. L. Sommers, named in the deed of trust, took it out of our hands and started foreclosure proceedings, and the property at 3215 Neighbor Road is tied up now legally and advertised for sale on July 18, 1957, by the trustee, S. L. Sommers, unless, of course, you make other arrangements with him. The address of the trustee is S. L. Sommers, 513½ Francis Street, St. Joseph, Mo., Telephone No. 4–0872." A copy of the advertisement of the foreclosure proceedings was enclosed in the letter.

Following receipt of the foregoing letter Mr. Edwards took immediate action in an effort to obtain discontinuance of the

foreclosure proceedings. He immediately made a telephone call to Mr. Smith and "he told me I was in default and I told him I was not in default," and was further advised by Smith that the matter had been turned over to Mr. Sommers, the trustee, and that "I would have to contact Mr. Sommers and see if he would be able to drop the foreclosure." Mr. Edwards then called Mr. Sommers who told him that as trustee he had been instructed by Mr. Smith to advertise the property for foreclosure sale; that he was only acting upon instructions, and that if he didn't hold the sale the sheriff would. Plaintiff stated that he next called Mr. Worden, attorney for the Smiths, who suggested that if he would send Mr. Smith a check for $75 it was possible that Mr. Smith would accept it and stop the foreclosure sale. Mr. Edwards testified that he also told Mr. Worden that he would be willing to pay all the costs involved in the proceedings. The witness testified that on that same date he mailed a check to Mr. Smith for $75 but that Smith refused to accept the check and mailed it back to him. Thereafter, Edwards mailed the check back to Smith and Smith again returned it. The efforts of Mr. Edwards were obviously unsuccessful and the property was sold, in accordance with the advertisement, on July 18, to Harlan C. and Ethel E. Dykes, for the sum of $2,200.

Mr. Edwards further testified that during the time he had occupied the premises he had spent between $600 and $700 in making permanent improvements. He also stated that upon the date of foreclosure the balance due on the first mortgage was $11,111.41, and the balance due on the note in question was $2,121.28; that after the sale he received a check from Mr. Sommers in the amount of $5.97 which was stated to be the balance due plaintiffs from the proceeds of the sale after payment of the note and expenses; that he had never cashed that check. On cross-examination Mr. Edwards admitted that when his deposition had been taken he had testified that he had desired that the $500 payment be credited on the principal of the note. The evidence indicated that plaintiffs had made all the payments on the first mortgage as they fell due.

Plaintiff called S. L. Sommers, the trustee, as a witness. He testified that he was engaged in the abstract business; that Mr. Smith had brought the note in question to him and directed that he foreclose; that he examined the note and no payments had been endorsed thereon; that he then asked Mr. Smith to take the note to his attorney and make sure that it was in default before starting foreclosure proceedings and that Mr. Smith reported back to him that his attorney had declared that the note was definitely in default. The trustee stated that he then began the advertisement of the notice of foreclosure sale. He stated that he did not notify the plaintiffs of the proceedings but requested that Mr. Smith give them notice and he agreed to write them.

Carl Walter testified for plaintiffs that he was in the real estate business in St. Joseph and that on April 15, 1957, plaintiffs gave him a 90-day listing for the sale of the property. He stated that he received an offer of $15,000 for the property and wrote Mr. Edwards to that effect on July 8, but that he did not hear from him until the day of the foreclosure sale when he received a letter in which Mr. Edwards accepted the offer upon certain conditions, but that it was then "too late" and nothing further was done about the transaction. No evidence was offered by the defendants.

The first point briefed by plaintiffs is that the trial court erred in failing to sustain their motion for a directed verdict because, under the undisputed evidence, the Smiths had in their hands at the time of foreclosure the $500 paid on May 31, 1955, which they were under a legal duty to apply to the payment of the installments claimed to be due, and hence there was no default by plaintiffs and the foreclosure was wrongful. In that connection they point out that at foreclosure time they had paid

a total of $815 on the note when, in fact, under the terms thereof, only 24 monthly installments (a total of $360) would have fallen due. The contention is without merit. The $500 payment was made at a time when no installment had become due. In accordance with the provisions of the note it was credited upon the principal. Mr. Edwards concedes that he intended that it be so applied. It is also apparent that he fully understood that the said payment did not dispense with the necessity of paying all of the regular installments. This for the reason that his check for $75, dated 11–30–55 (one payment of $15 having been made on 8–18–55), recited on its face the following: "July, Aug., Sept., Oct. & Nov. payments."

■ It should be obvious that once the $500 payment was properly credited to the principal of the note the payees were neither authorized nor required to thereafter cancel that credit (in whole or in part) and enter a different credit in order to show the payment of unpaid installments. We think the following rule is sound and should be applied in the determination of the issue presented: "In the absence of agreement to the contrary, it is undoubtedly the rule in installment cases providing for the payment of a specific amount *or more* at fixed intervals, that an excess payment made prior to or on one installment date is not effective to reduce the amount of or obviate the necessity of paying subsequent installments as they fall due according to the agreed schedule." Smith v. Renz, 122 Cal.App.2d 535, 265 P.2d 160, 163. See also Harman v. Walsh, 102 Cal.App.2d 608, 228 P.2d 333, and McBride v. Stewart, 68 Utah 12, 249 P. 114, 48 A.L.R. 267.

The principal cases relied on by plaintiffs in support of their contention, Salinger v. Lincoln Nat. Life Ins. Co., 8 Cir., 52 F.2d 1080, 80 A.L.R. 242, and Savings Bank of Southern California v. Asbury, 117 Cal. 96, 48 P. 1081, are not in point. Both of those cases involved a situation where a portion of the amount borrowed was retained by the mortgagee and never paid over to the borrower. In those circumstances the funds withheld were not payments but constituted funds belonging to the debtor and to which he was entitled. It was accordingly held that the mortgagee could not invoke the acceleration clause because of nonpayment of interest when it possessed money (belonging to the mortgagor) which was more than sufficient to pay the interest due. We rule that a default existed at the time the foreclosure proceedings were commenced as to the payments that became due on March 1, 1957 and thereafter.

■ However, plaintiffs alleged in their petition and now assert on appeal an alternative theory upon which to base their contention that the foreclosure was wrongful, i. e., that the Smiths had engaged in a course of conduct which would tend to lull plaintiffs into a false sense of security in concluding that the mortgage would not be foreclosed if they defaulted in payments due on the note. We agree with that contention. We have concluded that the evidence in the record before us would reasonably support a jury finding that the Smiths could not declare the whole amount of the note due without first giving reasonable notice to plaintiffs that they intended to insist upon the payments being made in accordance with the terms of the note and giving plaintiffs a reasonable opportunity to make the delinquent payments.

Plaintiffs defaulted on the first installment that came due on the note. An analysis of the payments thereafter made will indicate that there were only seven days in the period of more than two years that ensued from June 1, 1955, to the date the foreclosure proceedings were started that the payments were not in default. However, it should be noted that during that period the Smiths accepted a payment of five past-due monthly installments on two occasions, and a payment of four such installments on another occasion. A default existed as to four installments at the time foreclosure was started.

■ ■ In that connection it should be noted that plaintiffs offered to prove that both prior and subsequent to the execution of the note Mr. Edwards had a conversation with Mr. Smith in which Mr. Smith agreed that plaintiff could make infrequent multiple payments and that he would not foreclose if that manner of payment was followed. We rule that the evidence of the conversation prior to the execution of the note was properly excluded, but that the conversation tending to prove an agreement subsequent to the execution of the note should have been admitted. Chapman v. Breeze, 355 Mo. 873, 198 S.W.2d 717; Ewing v. McIntosh, 359 Mo. 625, 222 S.W. 2d 738; 20 Am.Jur., Evidence, § 1163, p. 1016. Since it is admitted that there was no consideration for the alleged agreement the evidence would not tend to establish a valid, binding, enforceable contract (as such), but would be admissible as tending to prove that the Smiths, by words and conduct, had induced the plaintiffs to believe that the method of payment they had adopted would not result in foreclosure. The theory is that the agreement would constitute a waiver or estoppel to invoke the acceleration clause until after the mortgagee has given reasonable notice that he will no longer be bound by his gratuitous agreement. The principle involved is sometimes referred to as a "waiver," Rayburn v. Atkinson, Mo.Sup., 206 S.W.2d 512, and in other cases as a "promissory estoppel," In re Jamison's Estate, Mo.Sup., 202 S.W.2d 879.

■ As we have heretofore indicated, we hold that evidence that the note was almost constantly in default for more than two years, and that on three occasions the default involved four or five monthly installments, and that payment thereof was accepted by the Smiths without having invoked the acceleration clause, and that they had agreed to that manner of payment, is sufficient to reasonably authorize a jury finding that the Smiths had waived the right to insist that the installments be paid on the date and in the amount as provided in the note until such time as the period of waiver was terminated by the giving of notice to plaintiffs that, in the future, they would insist upon prompt payment of the installments and affording a reasonable time in which to make the delinquent payments. Rayburn v. Atkinson, supra; Chapman v. Breeze, supra; Bogad v. Wachter, 365 Mo. 426, 283 S.W.2d 609; Ewing v. McIntosh, supra; Grippo v. Davis, 92 Conn. 693, 104 A. 165; Collins v. Collins, 348 Mich. 320, 83 N.W.2d 213; More Realty Corp. v. Mootchnick, 232 App.Div. 705, 247 N.Y.S. 712; Meyer v. Zuber, 92 Cal. App., 767, 268 P. 954; Jaudon v. Equitable Life Assur. Soc. of United States, 102 Fla. 782, 136 So. 517; McBride v. Stewart, supra; 92 C.J.S. Vendor and Purchaser § 256, p. 122; Longbotham v. Ley, Tex.Civ.App., 47 S.W.2d 1109; Seamen's Bank For Savings in City of New York v. Wallenstein Realty Corp., Sup., 6 N.Y.S.2d 706.

In connection with the foregoing we note that in the letter of June 29, 1957, to Mr. Edwards, Mr. Smith stated, " * * * making it necessary for us to explain that we had talked with you and had written to you in repeated efforts to get the payments." Upon another trial defendants may desire to offer proof as to what was done in that regard and the trial court can determine whether the evidence is sufficient to reasonably support a submission to the jury of the issue as to whether the period of waiver had been terminated by notice as heretofore discussed. See Annotation 107 A.L.R. IIa, p. 347.

■ Assuming, for the purposes of this opinion, that the Smiths, in the manner heretofore discussed, waived the right to insist upon prompt payment of the installments, then they did not have the right to foreclose at the time they directed the trustee to do so and hence the trustee's sale would constitute a wrongful foreclosure. In that situation plaintiffs could have brought a suit in equity to set aside the sale, or, let the sale stand and sue at law for damages. Loeb v. Dowling, 349 Mo.

674, 162 S.W.2d 875; Peterson v. Kansas City Life Ins. Co., 339 Mo. 700, 98 S.W.2d 770, 108 A.L.R. 583; Missouri Real Estate Syndicate v. Sims, 179 Mo. 679, 78 S.W. 1006.

▮ Since the case will be reversed (as to defendants Smith) and remanded for a new trial, there are other points relating to the question of damages which we should consider. As a part of their proof of damages plaintiffs sought to prove the amount of attorney fees they had paid and agreed to pay, expenses incurred in traveling from Mississippi to St. Joseph for depositions and trial, cost of depositions, and other expenses of the litigation. They complain of the exclusion of that evidence by the trial court. It would appear that the evidence was properly excluded. We fail to see any distinction, as relates to the measure of damages, between this action and other actions for damages. It is elementary that attorney fees and other expenses incident to litigation are not ordinarily recoverable in damage actions. We rule that the measure of damages in the instant case would be the difference between the reasonable market value of the property and the aggregate amount of the liens thereon at the date of the foreclosure sale. Missouri Real Estate Syndicate v. Sims, 121 Mo.App. 156, 98 S.W. 783. The case relied on by plaintiff, Myers v. Adler, 188 Mo.App. 607, 176 S.W. 538, involves an entirely different situation and is not in point.

▮ We have concluded that the court properly dismissed the cause as to the defendant trustee, S. L. Sommers. In considering that question we have been fully cognizant of the rule that "Trustees are considered as the agents of both parties—debtor and creditor—and their action in performing the duties of their trust should be conducted with the strictest impartiality and integrity. They are entrusted with the important function of transferring one man's property to another, and therefore both reason and justice will exact of them the most scrupulous fidelity." Goode v. Comfort, 39 Mo. 313, 325. However, the sole basis of the contention that the trustee may be liable herein is that no right to foreclose the deed of trust existed at the time such was done. But there is no evidence that the trustee knew of any fact that would indicate that he should not execute the power vested in him by the deed of trust or that by a reasonable investigation he could have learned of any such fact. He required that Mr. Smith obtain a legal opinion that the note was in default and such was done. As we have heretofore held, the note was actually in default at that time. If, as we have heretofore indicated, no right to foreclose existed, it was because of an oral agreement between Mr. Edwards and Mr. Smith and a course of conduct in regard to the manner of payment. There is no evidence that the trustee knew or, in the exercise of commensurate care, should have known of either. If he had required that the Smiths show him a record of the payments it would not likely have disclosed the true dates and amounts of the payments as we note that Mr. Smith entered the payments in the passbook as if made on the due date and not on the date of actual payment. There is no evidence that the trustee acted fraudulently or unfairly or failed to exercise reasonable diligence in determining the facts in regard to the right of the Smiths to direct foreclosure. We accordingly rule that no submissible case was made as to defendant Sommers.

The judgment is affirmed as to defendant S. L. Sommers, and reversed and cause remanded for a new trial as to the other defendants.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.