LICK CREEK SEWER SYSTEMS, INC., Lawrence Chura and Anne Chura, Appellants,

v.

BANK OF BOURBON, Grover Johnson and John Woodward, Respondents.

Nos. 15204, 15258.

Missouri Court of Appeals, Southern District, Division One.

March 15, 1988.

John J. Allan, Mary V. Taylor, St. Louis, for appellants.

R. Brooks Kenagy, Steelville, for respondent Bank of Bourbon.

Mazzei, Bell & Broshot, Steelville, for respondent Grover Johnson.

John J. Horgan, Brian R. Plegge, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Keaney, St. Louis, for respondent John Woodward.

HOLSTEIN, Judge.

This is the second of two actions filed by Lick Creek Sewer Systems, Inc., Lawrence Chura, and Anne Chura (plaintiffs) alleging various irregularities and improprieties arising out of a foreclosure sale of plaintiffs' property, said sale having occurred in January of 1982. Plaintiffs appeal from an order sustaining motions to dismiss filed on behalf of defendants Bank of Bourbon (the Bank), Grover Johnson, and John Woodward. On appeal, the plaintiffs claim the trial court erred in determining that a prior dismissal of similar claims against these defendants was res judicata as to the claims presented here and because the trial court erred in finding that the claims alleged in plaintiffs' petition failed to state a cause of action against defendants. We reverse.

The first action was commenced on January 29, 1982. The petition in the first action, as amended, consisted of four counts naming the Bank, Woodward, Johnson, the Estate of George Knapp, and seven others as defendants. Count I alleged that plaintiffs had executed two notes secured by two deeds of trust in favor of the Bank, one note for $228,030.25 dated April 3, 1981, and the second for $16,750 dated July 28, 1981; that there had been discussions regarding extensions of credit among plaintiffs, the Bank, and Johnson; that plaintiffs had been lulled into a false feeling of security because of a course of dealing with the Bank and Johnson; and that the Bank and Johnson had given them only ten days opportunity to cure defaults before giving directions to Woodward to proceed with foreclosure. Count I further alleged that Woodward had acted as attorney for the plaintiffs, and he had breached a fiduciary duty toward plaintiffs by acting on behalf of the Bank in the foreclosure. Count I asked for damages against Johnson, the Bank, and Woodward for their alleged wrongful foreclosure. Count II sought to set aside the foreclosure sale and subsequent conveyances after the sale and to enjoin further conveyances. Count III of the petition in the prior action alleged that plaintiffs had rights to the proceeds of the sale at the foreclosure and that Woodward, Johnson, and the Bank had conspired to interfere with plaintiffs' contractual rights to the proceeds of the sale. Count IV was a claim by Anne Chura for dam-

ages resulting from an alleged conversion of personal property which she claimed was located on the real estate at the time the Bank and Johnson took possession of the real property.

Following the filing of motions to dismiss by various defendants in the former case, including the Bank, Johnson, and Woodward, the trial court on June 1, 1983, dismissed all four counts with prejudice against the Bank and Woodward. For reasons not apparent on the record, the court did not rule on Grover Johnson's motion to dismiss. The claims against Johnson were still pending when plaintiffs made an abortive attempt to appeal from the order dismissing the petition as to other defendants. The appeal was dismissed because the trial court had failed to adjudicate all the issues among all the parties. *Chura v. Bank of Bourbon*, 674 S.W.2d 675, 678 (Mo.App. 1984).

Following the dismissal of the appeal, the plaintiffs appeared before the trial court and filed a dismissal of all claims against all defendants in the original action without prejudice. Pursuant to that request, the court made the following minute entry on September 4, 1984:

> Counts I, II, III, and IV of petition ... dismissed as per said Dismissal Without Prejudice.

On the date the order was entered, all parties were present, either in person or by attorney, and joined plaintiffs' attorney in signing a memorandum titled "Dismissal Without Prejudice" which purported to dispose of all claims and counterclaims. The record gives no indication that any of the parties objected to the court's minute entry.

The present case began with the filing of plaintiffs' seven-count petition on January 23, 1987, naming the Bank, Johnson, Woodward, and the Estate of George Knapp as defendants.[1]

Count I of plaintiffs' petition alleges that Lick Creek had executed two notes secured by two deeds of trust in favor of the Bank, as described in the former petition; that the Churas had guaranteed payment of the notes; that Woodward, as trustee for the Bank and under the Bank's direction, had foreclosed on the deed of trust secured by the lesser of the two notes and that Woodward had received $200,000 at the foreclosure sale; that the lesser note should have been satisfied; and that Woodward should pay the balance of $183,250 over to plaintiffs. Count II alleges that Johnson and the Bank had knowledge of Woodward's fiduciary and contractual obligations under the deed of trust and induced Woodward to violate those obligations maliciously and without justification; and that Johnson, the Bank, and Woodward had conspired together to interfere with the plaintiffs' contractual rights to be paid the excess over $16,750 received at the foreclosure sale. Count V alleges that the Bank, through its officer Johnson, "wrongfully foreclosed" on the July 28, 1981, deed of trust by giving plaintiffs "a false sense of security about their obligations, and misrepresented the amount due at the time of foreclosure...." The manner in which this allegedly occurred was that the Bank had failed to require prompt and timely payment over several years of dealing with plaintiffs; that in the fall of 1981 the Bank approved a "refinancing arrangement" and represented it would not foreclose but would continue the "financing arrangement" pending the completion of a "refinancing package"; and that on November 20, 1981, the Bank requested that plaintiffs renew the "financing arrangement" by December 4, 1981, which plaintiffs made "arrangements" to do. However, after December 4, 1981, the Bank failed to meet with the plaintiffs and dispel their belief "in the security of their position with the ... Bank." The Bank thereafter is alleged to have foreclosed without giving a "proper and adequate demand" for payment by demanding $244,780.25 while it only foreclosed on a $16,750 debt. In Count VI, Anne Chura makes a claim for damages resulting

---

1. Prior to appeal, the plaintiffs dismissed their petition as to the Estate of George Knapp and also dismissed Counts III, IV and VII of the petition. We will make no further reference to that defendant or those counts.

from conversion by the Bank and Johnson of certain personal property which she claims was located on the real estate at the time of the foreclosure.

Motions to dismiss were filed by Woodward, the Bank, and Johnson. These motions claim that the June 1, 1983, order of dismissal with prejudice operates as a bar to this action under the doctrines of res judicata, collateral estoppel, and splitting causes of action and that the petition fails to state any claim upon which the relief sought can be granted. The trial court sustained the motions as to all three defendants. Plaintiffs appeal from the order of dismissal.

The effect of a dismissal is controlled by Rule 67.03,[2] which provides:

A dismissal without prejudice permits the party to bring another civil action for the same cause ... A dismissal with prejudice bars the assertion of the same cause of action or claim against the same party....

The dismissal with prejudice of the claims against the Bank and Woodward, followed approximately 15 months later by an order dismissing the same claims against all three defendants without prejudice, creates the apparent dilemma of two mutually exclusive orders. Woodward and the Bank now claim the trial court in the original action was without authority to dismiss the plaintiffs' petition without prejudice as to them. In their briefs, they make the following statement:

While the June 1, 198[3], judgment was not final for purposes of appeal, it was final for all other purposes.

The only authority cited for this proposition is Rule 75.01. That rule provides:

The trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time....

The argument is made that the trial court was therefore without authority to modify

its order after the passage of 30 days. The term "entry of judgment" as used in Rule 75.01 has been interpreted to mean a final, appealable judgment that disposes of all parties and all issues, and the time limits of that rule are not applicable if the judgment is not final. *Kozeny–Wagner, Inc. v. Shark,* 709 S.W.2d 149, 151–152 (Mo.App. 1986). As stated in *State ex rel Schweitzer v. Greene,* 438 S.W.2d 229, 232 (Mo. banc 1969):

Logic and justice would seem to indicate that a trial court should be permitted to retain control of every phase of a case so that it may correct errors, or, in its discretion, modify or set aside orders or judgments until its jurisdiction is extinguished by the judgment becoming final and appealable....

■ Both Woodward and the Bank argue that because the order of September 4, 1984, did not expressly set aside the order of June 1, 1983, the former order was still effective. No authority is cited for this statement, and we find none. The order of September 4, 1984, dismissing plaintiffs' claims without prejudice is in direct and irreconcilable conflict with the earlier dismissal of plaintiffs' petition with prejudice. Inasmuch as the trial court had the authority to enter the latter order, the effect of that order was to modify the earlier order. Pursuant to Rule 67.03, the order of dismissal without prejudice entered September 4, 1984, authorized plaintiffs to bring the present action based on the same claims or transactions alleged in the earlier action against Woodward, the Bank, and Johnson.

■ Another reason advanced by the Bank and Woodward for declaring the dismissal without prejudice of September 4, 1984, a nullity is that Rule 67.01 prohibits a dismissal without prejudice after the introduction of evidence at the trial without leave of court or consent of the adverse party. They argue that when the June 1, 1983, order of dismissal was entered, that was a trial. Without deciding whether a hearing or ruling on a motion to dismiss constitutes a trial, the minute entry of September 4, 1984, demonstrates that the trial

---

**2.** All references to rules are to Missouri Rules of Court, V.A.M.R.

court authorized the voluntary dismissal without prejudice. The joinder of Woodward, the Bank, Johnson, and plaintiffs in the memorandum of "Dismissal Without Prejudice" filed the day the minute entry was made serves to emphasize the fact that all parties were given an opportunity to be heard and apparently consented to the minute entry which was made.

We now turn to whether the plaintiffs have stated a cause of action against the defendants. In determining whether a pleading states a claim upon which relief may be granted, the averments are to be given a liberal construction and accorded their reasonable and fair intendment and a pleading is not to be held insufficient merely because it lacks definiteness or certainty or because of informality in the statement of an essential fact. *Merriman v. Caton*, 395 S.W.2d 106, 109 (Mo.1965); *Stanfield v. Nat. Elec. Contractors Ass'n.*, 588 S.W. 2d 199, 200 (Mo.App.1979). See also *Sofka v. Thal*, 662 S.W.2d 502, 509 (Mo. banc 1983). A pleading must contain a short and plain statement of facts showing the pleader is entitled to relief. Rule 55.05. Mere conclusions of the pleader not supported by factual allegations are disregarded in determining whether a petition states a cause of action on which relief can be granted. *Commercial Bank of St. Louis Co. v. James*, 658 S.W.2d 17, 22 (Mo. banc 1983).

■ Count I, summarized, alleges that Woodward had a contractual obligation under the deed of trust to pay any balance in excess of $16,750 to plaintiffs, but failed to pay over the balance of $183,500 after receiving said amount at a foreclosure sale, thus breaching his contractual and fiduciary responsibility. The duties and powers of a trustee are fixed by the terms of the contract, namely, the deed of trust. A trustee in a deed of trust acts in a fiduciary capacity and he must act with complete integrity, fairness, and impartiality toward both the debtor and the creditor. *Spires v. Edgar*, 513 S.W.2d 372, 378 (Mo. banc 1974). Treating as true the allegations that Woodward failed to pay over the excess proceeds from the foreclosure sale as

required by the deed of trust, Count I states a cause of action against Woodward.

Plaintiffs assert that their cause of action under Count II is one for tortious interference with a contract and unlawful civil conspiracy.

■ The elements of a cause of action for tortious interference with a contract are (1) the existence of a contract, (2) defendant's knowledge of the contract, (3) that defendant induced or caused the breach of contract, (4) that the defendant's acts were not justified, and (5) that the plaintiff thereby suffered damages. *Guirl v. Guirl*, 708 S.W.2d 239, 247 (Mo.App. 1986).

■ Plaintiffs' attempt to state a claim for tortious interference with contract fails because the pleading fails to plead facts demonstrating that the breach of contract was unjustified. *Pillow v. General American Life Ins. Co.*, 564 S.W.2d 276, 282 (Mo.App.1978). The Bank, Woodward, and plaintiffs were all parties to the contract which was allegedly breached. All three had economic rights and duties arising out of the notes and deeds of trust which made up the total contract. Assuming the Bank, through Johnson, induced Woodward to keep the excess proceeds from the foreclosure for himself or to pay the excess proceeds from the foreclosure sale to the Bank, the Bank breached its obligations to the plaintiffs under the note and deed of trust. While we find no Missouri case directly on point, the federal cases and cases from sister states overwhelmingly support the proposition that where both the plaintiffs and defendants are parties to the contract, the defendants' breach is not the basis of a cause of action for tortious interference with a business or contractual relationship. *Hickman v. Winston County Hospital Board*, 508 So.2d 237, 238 (Ala. 1987); *In re Colbert*, 43 B.R. 508, 509 (E.D.Mo.Bkrtcy.1984) (applying Missouri law); *Wilmington Trust Co. v. Clark*, 289 Md. 313, 424 A.2d 744, 754 (1981); *Ross v. Life Insurance Co. of Virginia*, 273 S.C. 764, 259 S.E.2d 814, 815 (1979); *Dryden v. Tri–Valley Growers*, 135 Cal.Rptr. 720, 726, 65 Cal.App.3d 990, 999 (1977); *Battis-*

*ta v. Lebanon Trotting Ass'n.*, 538 F.2d 111, 116 (6th Cir.1976); *Hein v. Chrysler Corp.*, 45 Wash.2d 586, 277 P.2d 708, 715 (1954); Prosser, Law of Torts, § 129, p. 934 (4th ed. 1971). Missouri courts have stated that a defendant who has a valid, existing economic interest in a contract is justified in inducing its breach, unless the defendant uses improper means to induce the breach. *Hill v. Kansas City Star Co.*, 719 S.W.2d 808, 811 (Mo.App.1986). Such improper means must be pled. *Friedman v. Edward L. Bakewell, Inc.*, 654 S.W.2d 367, 369 (Mo.App.1983). Disregarding the conclusion alleging that the acts of defendants were "without just cause or excuse," no facts alleged in Count II show that the Bank or Johnson used tortious or illegal means to induce Woodward's breach. The mere fact that a breach of contract resulted does not, *ipso facto*, indicate the means used to induce the breach were illegal or tortious. Consequently, plaintiffs have failed to allege facts demonstrating that the Bank's and Johnson's conduct was unjustified.

Ancillary to the above rules is the principle that a corporate officer or employee acting within the general range of his authority is privileged to induce a breach of the corporation's contract, provided no improper means are used, the corporate officer acts in good faith to protect the corporation, and he is not acting for his own personal benefit. *Nola v. Merollis Chevrolet Kansas City, Inc.*, 537 S.W.2d 627, 634 (Mo.App.1976). While Count II alleges Johnson acted individually and as the Bank's agent, nothing alleged in Count II indicates that Johnson's acts were for his personal benefit. No facts are alleged indicating Johnson employed illegal or tortious means to induce Woodward to breach the contract, or that Johnson exceeded his authority by inducing a breach. No facts are alleged indicating Johnson's conduct was not a good faith effort to protect the Bank's interests. Therefore, no cause of action for tortious interference with contract is stated in Count II against the Bank, Woodward, or Johnson.

Count II alleges facts sufficient to state a cause of action for unlawful civil conspiracy. To constitute a civil conspiracy, there must be (1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damage as a result. *Dickey v. Johnson*, 532 S.W.2d 487, 502 (Mo.App.1975), citing 15A C.J.S. *Conspiracy* § 1(2), p. 599. The authorities are divided on the question of whether a party to a contract may be held liable for conspiring with third parties to breach his own contract. 15A C.J.S. *Conspiracy* § 13, p. 640 (1967). Missouri is counted among those states which holds a contracting party liable who conspires with third parties to breach the contract. *Anheuser–Busch, Inc. v. Weber*, 364 Mo. 573, 265 S.W.2d 325, 330 (1954), *reversed* (on other grounds), 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546 (1955); *Contour Chair Lounge Co. v. Aljean Furniture Mfg. Co.*, 403 S.W.2d 922, 926 (Mo.App.1966). Count II alleges that Johnson was an officer and agent of the Bank and that he acted "individually and in that capacity" when he participated in the conspiracy. Without deciding the question, we doubt that one party to a contract can have a cause of action against other parties to the same contract under the theory of unlawful civil conspiracy unless a third party is involved in the conspiracy. As tenuous as the claim may be that Johnson was acting in his individual capacity when he allegedly conspired to induce the breach of contract, we must accept it as true for the purposes of the motion to dismiss. While the pleading in Count II is no model, giving the pleading the "liberal construction" to which it is entitled convinces us that it states a cause of action for unlawful civil conspiracy.

Count V, in a vague and disjointed fashion, alleges a series of "arrangements," "financing arrangements," and "refinancing arrangements" resulting in a belief by plaintiffs that their position with the Bank was secure when the Bank commenced foreclosure. Either alternatively or additionally (the pleadings are unclear on this

point), plaintiffs claim the Bank demanded payment of $244,780.25, the full amount due under two notes held by the Bank, when it was only going to foreclose "... on a $16,750 debt." Count V of the pleading does not further articulate how plaintiffs claim to be damaged as a result of the Bank demanding payment of both notes but foreclosing only on the lesser of the two notes. Inasmuch as the complaint in Count V fails to explain why the Bank was not entitled to demand payment of the full amount due under the two notes or how plaintiffs were damaged by the demand, we treat these allegations as mere surplusage.

In their brief, plaintiffs cite *Edwards v. Smith*, 322 S.W.2d 770 (Mo.1959) and *Morgan v. Bryant*, 673 S.W.2d 129 (Mo.App. 1984) as support for the cause of action claimed to be stated in Count V. *Morgan* and *Edwards* stand for the proposition that a holder of a secured note who acquiesces in or agrees to delays in installment payments may be held to have waived the right to accelerate the installments due under the note without first giving notice to the makers that the holder intends to insist on prompt payment and thereafter allowing a reasonable time in which to make the delinquent payments before foreclosure. *Morgan* and *Edwards* are based on a "waiver and estoppel" theory. To raise estoppel, there must be (1) an admission, statement, or act inconsistent with a claim later sued upon; (2) action by the other party on the faith of such conduct; and (3) injury to the other party if the first party is allowed to contradict or repudiate its original admission, statement, or act. *Smith v. Christopher*, 737 S.W.2d 510, 513 (Mo.App. 1987).

Assuming *Morgan* and *Edwards* create a cause of action, the pleadings in this case do not allege facts bringing plaintiffs' claim within the parameters of such cause of action. First, the only negotiations, agreements, or discussions relating to refinancing arrangements or extensions of time for payment which may be considered are those occurring subsequent to execution of the note and deed of trust which was alleged to have been "wrongful-

ly foreclosed." Whatever discussions or dealings occurred prior to the execution of the July 28, 1981, documents became merged into the note and deed of trust. *Lawless v. Sears, Roebuck & Co.*, 555 S.W. 2d 79, 81–82 (Mo.App.1977). Second, the pleadings do not allege that any late or partial payments had been accepted on the note which might have induced plaintiffs to believe full and prompt payment was not required. Third, there is no allegation that the note was a note on which installments were accelerated without demand for prompt payment of such installments. Fourth, the pleadings admit a demand was made for full payment of the note prior to commencement of foreclosure. This demand cannot be characterized as inconsistent with the exercise of the right to foreclosure. All of the elements of estoppel do not "clearly appear." *Smith v. Christopher, supra*. The cause of action alleged in Count V must be based on some theory other than that enunciated in *Morgan* and *Edwards*.

We hold that Count V states, in convoluted terms, a cause of action for breach of contract against the Bank. Applying a very tolerant and liberal construction to the allegations of Count V, it alleges that a specific refinancing proposal was made by the Bank sometime during the fall of 1981, under which the Bank agreed, either explicitly or implicitly, that it would not foreclose on the deed of trust if the plaintiffs complied with the proposal on or before December 4, 1981. We also take the pleading to allege that plaintiffs complied with the proposal approved by the Bank within the time required, but the Bank refused to accept their performance and proceeded with foreclosure in violation of its agreement. The Bank's alleged commitment to accept a particular refinancing proposal in lieu of payment on the notes was in the nature of an option which became an absolute and unconditional obligation when the conditions of such proposal were met. See *Civic Plaza Nat'l. Bank v. First Nat'l. Bank in Dallas*, 401 F.2d 193, 196 (8th Cir.1968). In order to state a cause of action in contract, plaintiff must allege the making and existence of a valid,

enforceable contract between the plaintiff and defendant, the right of plaintiff and the obligation of defendant thereunder, a violation of the contract by defendant, and damages resulting from the breach. *Gilomen v. Southwest Missouri Truck Center, Inc.,* 737 S.W.2d 499, 500–501 (Mo.App. 1987).

 Count V states no cause of action against Johnson. Johnson, as a disclosed agent of the Bank, is not personally liable to a third party for a breach of the Bank's contract. *Moore v. Seabaugh,* 684 S.W.2d 492, 494 (Mo.App.1984).

The Bank persuasively argues that Count V suffers from vagueness and ambiguity because the details of the "refinancing arrangement," "arrangements," renegotiations, renewals, and credit extension agreements are not described. However, mere vagueness is not grounds for dismissal, and we prefer to dispose of the case on its merits instead of on the pleadings. *Bennett v. Mallinckrodt, Inc.,* 698 S.W.2d 854, 865 (Mo.App.1985), *cert. denied,* 476 U.S. 1176, 106 S.Ct. 2903, 90 L.Ed.2d 989 (1986).

Count VI, Anne Chura's claim for conversion of personal property against the Bank and Johnson, is attacked because no demand is alleged to have been made for the return of the property. Conversion is the unauthorized assumption of a right of ownership over the personal property of another to the exclusion of the owner's rights. *Southern Missouri Bank v. Fogle,* 738 S.W.2d 153, 157 (Mo.App.1987). An assumption of the right to ownership is "unauthorized" if the property is taken without the express or implied consent of the owner. *Maples v. United Sav. and Loan Ass'n,* 686 S.W.2d 525, 527 (Mo.App. 1985). Even when the taking is authorized, a conversion action will lie if the owner makes a demand for the return of the property followed by a refusal to return the property. *Farmers & Merchants v. Borg-Warner,* 665 S.W.2d 636, 640 (Mo. App.1983). Applying these principles to Count VI of the petition, it alleges a "wrongful foreclosure" and further states:

At sometime after said [real] property was sold, the Defendants jointly and severally unlawfully assumed dominion, ownership, control and possession of Plaintiff's personal property....

These allegations sufficiently aver that the Bank and Johnson had no right to enter upon the real estate and, by inference, had no right to take possession of personal property located on said real estate. Count VI states a cause of action against the Bank and Johnson. No relief is sought against Woodward under Count VI.

We reverse the order dismissing Counts I, II, V, and VI and remand the case for further proceedings consistent with this opinion.

CROW, C.J., and GREENE, P.J., concur.